**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ALTON CRAIN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No: SA-16-CA-832-XR** |
| | § | |
| **JUDSON INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE XAVIER RODRIGUEZ, UNITED STATES DISTRICT JUDGE:

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff, Alton Crain, files

this response to Judson Independent School District's Motion for Summary Judgment (Dkt. 99):

## I.   SUMMARY OF THE RESPONSE

1.      Defendant Judson Independent School District ("JISD") moves for summary

judgment on each of Plaintiff's claims of Equal Pay Act discrimination and retaliation, and Title

VII discrimination and retaliation. JISD's motion (Dkt. 99) should be denied in its entirety because

there are genuine issues of material fact on each of Plaintiff's claims.

## II.   SUMMARY JUDGMENT EVIDENCE

2.      Plaintiff incorporates by reference for all purposes the items attached to and made

part of this Response in the attached Appendix: Evidence in Support of Plaintiff's Response to

Defendant's Motion for Summary Judgment, as required by Local Rule CV-7.

## III.   OBJECTIONS TO JISD'S SUMMARY JUDGMENT EVIDENCE

3.      Plaintiff objects to the evidence submitted and relied upon by JISD to support its motion because, as specified below, certain evidence is incompetent, unauthenticated, and insufficient to support summary judgment in JISD's favor.

4.      <u>Exhibit A, Affidavit of Joe Gonzalez (Dkt. 99-2)</u>: The affidavit states the witness has "personal knowledge of all facts stated in this affidavit, and they are true and correct," but it does not describe the affiant's job function or duties, or indicate how he would have personal knowledge of the broad array of topics covered in his affidavit. Such far-reaching topics include Plaintiff's grievance proceedings, discussions concerning schedule changes at the JSAS/JAC campus, schedule changes at the Adult and Community Education/Adventure Club ("ACE/AC") program, and the comparators identified by Plaintiff. Rule 56 requires that affidavits "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. R. 56(d). A district court may "rely on affidavits where the affiants' 'personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore." <u>DIRECTV, Inc. v. Budden</u>, 420 F.3d 521, 529-30 (5th Cir. 2005) (concluding that Senior Director for DTV's Office of Signal Integrity, whose affidavit set forth his "familiar[arity] with the usual and customary business practices involved in all aspects of DIRECTV's investigations of individuals and businesses suspected of illegally obtaining access to DIRECTV programming," was competent to testify as to method of competitor's interception of satellite communications). But, Mr. Gonzalez's affidavit provides no explanation for how he has personal knowledge of such far-reaching topics; his affidavit is completely void of any explanation of how his knowledge of these topics could be reasonably inferred from his duties and functions as "Executive Director of Student Support Services."

5.      <u>Exhibits A-1 to A-16 (Dkts. 99-3 to 99-18)</u>: None of the exhibits are authenticated in any manner as required by Rule 901 of the Federal Rules of Evidence. Mr. Gonzalez's affidavit contains no information on the exhibits. Compare the approach of Mr. Gonzalez's affidavit to the approach of the Affidavit of Marco Garcia, the Chief Human Resources Officer for JISD, which authenticates the business records attached to the affidavit. <u>See</u> Dkt. 99-19 at 1.

## IV. STATEMENT OF MATERIAL FACTS

### A. <u>Resolution of Plaintiff's Pay Disparity Grievance</u>

6.      As set out in JISD's motion, Plaintiff is an African American male teacher currently employed by JISD. Dkt. 99 at ¶ 4. Plaintiff was first hired by JISD as a teacher for the 2005-2006 school year. <u>Id.</u> Prior to being hired as a teacher, Plaintiff was on JISD's substitute teacher list during the 2003-2004 school year. <u>Id.</u> As a classroom teacher, he is employed each year under a one-year term educator contract. <u>Id.</u> For the last several school years, he has been employed as a secondary teacher at the District's Judson Achievement Center (JAC) program. <u>Id.</u> He was recently issued and has accepted another term educator contract for the 2018-2019 school year. <u>Id.</u>

7.      As further set out in JISD's motion, the JAC is an alternative intervention program for students who have behavioral and/or emotional difficulties that require a structured therapeutic learning environment that cannot be provided on a regular campus. <u>Id.</u> at ¶ 5. The JAC program provides a setting where students may pursue their academic work while learning behavior control and social skills. <u>Id.</u> The goal for all JAC students is to return to their regular education campus and program as quickly as possible. <u>Id.</u> The JAC is housed on the same campus as the Judson Secondary Alternative School (JSAS). <u>Id.</u>

8.      The JISD Compensation Plan for 2014-2015 year, which applied to Plaintiff, provides that "[s]upplemental pay for educators to perform duties outside of the regular workday and or contract period will be in the amount of $25.00 per hour for teachers." Dkt. 99-34 (2014-

2015 Comp. Plan Excerpt) at 11. When Plaintiff applied to work for the ACE/AC program, it was noted that he was a "Teacher – K-12 Cert. Teacher" and "Special Ed. Certified." App'x at Exh. A (Crain Decl.), Exh. A-1 (AC Appl.); A-2 (TX Educator Cert.); dkt. 99-26 (Teacher Service Record); A-3 (JISD Prof. Educator Appl.). While Plaintiff was employed by the ACE/AC program, Plaintiff's duties included teaching and tutoring students (including subjects such as computer skills), which required Plaintiff to utilize his professional teaching skills and background. App'x at Exhs. A (Crain Decl.), A-4 (9/5/2013 Email to HR Dir. Howard); A-5 (Tutoring Sign-In Sheets). Indeed, JISD relied on Plaintiff to use his "expertise" to improve the program and the services it offered to students. App'x at Exhs. A (Crain Decl.), A-6 (9/8/2008 Email fr. D. Hanz). Notwithstanding any changes to compensation rates for ACE/AC program, JISD did not obtain Plaintiff's agreement to being paid at an "Aide" rate. App'x at Exh. A (Crain Decl.). With respect to his compensation, JISD informed Plaintiff that he was the only ACE/AC employee who was not paid time and a half for overtime work. App'x at Exhs. A (Crain Decl.), A-7 (8/15/2012 Email fr. G. Triana).

9.      Prior to the 2012-2013 term, Plaintiff was paid a rate of $20.00/hour for his work at ACE/AC. App'x at Exhs. A (Crain Decl.), A-8 s(Pl.'s JISD Paystubs). As detailed in the administrative proceedings, after Plaintiff asserted complaints of discrimination against JISD, his pay rate was reduced from $20.00/hour to $9.00/hour. App'x at Exhs. A (Crain Decl.), A-9 (9/10/2013 Notice of Complaint: Level One). Consequently, on September 10, 2013, Plaintiff initiated a grievance with JISD complaining of a pay rate change motivated by discriminatory animus (race and gender). Id. That grievance was resolved with the execution of a Grievance Resolution Agreement by Plaintiff (on August 5, 2014) and Dr. Willis Mackey, then-Superintendent, on behalf of JISD (on August 11, 2014). App'x at Exhs. A (Crain Decl.), A-10 (Grievance Resolution Agreement).

10.     The Grievance Resolution Agreement provided that JISD would pay Plaintiff $8,800.00 in exchange for release of any claims against JISD up to and including the date of the agreement. Id. Notably, the Agreement specifically excepted from the release "any rights or claims that arise subsequent to the date this Agreement is executed, including any rights to enforce this Agreement and any disputes relating to his future employment or compensation." Id.

### B.  JISD Changes Plaintiff's Work Hours and Adventure Club Hours

11.     After the pay disparity grievance was resolved, Plaintiff intended to continue working at the ACE/AC program. App'x at Exh. A (Crain Decl.). Since approximately August, 2005, Plaintiff's primary work hours at JAC had been 6:00 a.m.-2:00 p.m. App'x at Exhs. A (Crain Decl.), A-11 (Daily Schedule). Plaintiff's schedule was in part dictated by JISD's need for Plaintiff to ride the bus with some of his special needs students to avoid behavioral incidents on the bus. App'x at Exhs. A (Crain Decl.), A-12 (Letters fr. Y. Harris and M. Franco). In August, 2008, Plaintiff began working in the ACE/AC after-school program, where his work hours were approximately 2:20 p.m.-4:20 p.m. App'x at Exh. A (Crain Decl.).

12.     On August 12, 2014—*one day* after Plaintiff's pay claim grievance was resolved by agreement—JISD instituted a pretextual policy change that purportedly required staff to be in place for the ACE/AC no later than 2:30 p.m., and required staff to work the entire block from 2:30 p.m. to 6:30 p.m. App'x at Exh. A (Crain Decl.). In addition, Plaintiff was notified that his primary work hours were also being changed. On August 13, 2014, Plaintiff was presented with a form to indicate his acknowledgment of the changed work hours from 6:00 a.m.-2:00 p.m. to 7:00 a.m.-3:30 p.m. App'x at Exhs. A (Crain Decl.), A-13 (8/13/2014 JSAS Acknowledgment Form).

13.     Suspiciously, on August 12, 2014, Plaintiff was also asked by JAC Principal Greg Mihleder and Student Services Exec. Dir. Joe Gonzalez if he intended to work after hours at the

ACE/AC and Evening High School. App'x at Exh. A (Crain Decl.). After Plaintiff responded affirmatively that he did intend to work in those programs, Plaintiff's primary work hours at JAC were changed again (to 7:20 a.m.-3:50 p.m.). Thus, Plaintiff's schedule was changed twice in one week: first to 7:00 a.m-3:30 p.m., and then to 7:20 a.m.-3:50 p.m. App'x Exh. A (Crain Decl.). These schedule changes made it impossible for Plaintiff to report to the ACE/AC at the newly-required 2:30 p.m. check-in time. Id. JISD Superintendent Mackey followed up with a visit to Plaintiff's campus on August 21, 2014, to ensure Plaintiff signed the new acknowledgment form regarding the 7:20 a.m.-3:50 p.m. primary hours schedule. App'x at Exhs. A (Crain Decl.), A-14 (8/28/2014 email fr. Pl. to G. Mihleder), A-15 (8/20/2014 email fr. G. Mihleder to Pl.), A-16 (8/28/2014 executed JSAS Acknowledgement Form). Importantly, Plaintiff was the only ACE/AC teacher affected by both "policy" changes. The other individuals identified by JISD as having resigned due to work hours mandate change (see dkt. 99-12) were not certified teachers. App'x at Exh. A (Crain Decl.).

14.     When Plaintiff reported for work at the ACE/AC on August 25, 2014, he was told he was not permitted to work at the ACE/AC if he checked-in after 2:30 p.m. App'x Exh. A (Crain Decl.). Thus, Plaintiff's employment with the ACE/AC was effectively and pretextually terminated that day. App'x at Exhs. A (Crain Decl.), A-17 (8/27/2014 email fr. E. Howard to D. Hanz), A-18 (8/25/2014 Sign-In Sheet). Plaintiff applied to the Texas Workforce Commission for unemployment benefits after he was terminated from the ACE/AC program. App'x at Exhs. A (Crain Decl.), A-19 (TWC Not. of Appl. for Unempl. Benefits). But, Plaintiff did not receive benefits because JISD misleadingly informed the TWC that Plaintiff was still employed. Id.

15.     Plaintiff's contract with JISD provides that JISD may make changes to Plaintiff's responsibilities. Dkt. 99-21 at ¶ 5. But, the Association of Texas Professional Educators advises its members that "It is understood that, like compensation, a district is generally free to make

changes to work dates and hours for the upcoming school year, as long as it provides the educator with notice of the change at least 45 calendar days before the first instructional day of the school year." App'x at Exhs. A (Crain Decl.), A-20 (ATPE website excerpt).

16.     Neither Plaintiff, his students, nor their parents received any advance notice of the change in the JAC/JSAS school hours. App'x Exhs. A (Crain Decl.), A-21 (Parent letter). Moreover, even Principal Gregory Mihleder was unaware of the schedule change as of August 14, 2014. Dkt. 99-8 (Principal Mihleder recommending that school hours remain 7:15 a.m.-7:45 p.m. and indicating he had no knowledge of the change in hours). The improperly noticed schedule changes were communicated to Plaintiff only days after Plaintiff executed the Grievance Resolution Agreement. In addition, of the individuals identified by JISD as having resigned as a result of the purported policy changes in hours (see dkt. 99-12), Plaintiff was the only professional teacher who was affected by the schedule changes. App'x at Exh. A (Crain Decl.).

   **C.  Other Teachers Permitted to Begin Work After 2:30 p.m.**

17.     In contrast, female employees, who had job responsibilities and duties that were substantially similar to Plaintiff, were permitted to arrive at the ACE/AC at 4:00 p.m. to begin work. Even though Plaintiff was not permitted to begin working after 2:30 p.m., other ACE/AC employees were so allowed; thus, Plaintiff was subjected to differing treatment and work standards. For example, during the Fall 2014 term, JISD teacher Gale Edwards (black female) was permitted to work from 4:00 p.m. to 6:00 p.m. App'x at Exhs. A (Crain Decl.), B (Crain Depo.) at 143, 150; A-22 (G. Edwards Employee Time Sheet). Ms. Edwards taught technology topics to students at the program. App'x at Exh. A (Crain Decl.). Plaintiff also teaches technology topics to students and designs computer-based Individual Education Plans for his students. Id.

18.     Plaintiff initiated a grievance with JISD regarding his schedule changes on September 12, 2014. App'x at Exhs. A (Crain Decl.), A-23 (9/12/2014 Notice of Complaint –

Level One). But throughout this process, even JISD was unclear on what Plaintiff's work schedule was or was supposed to be. In its Level I Grievance Response, it noted that his "current work hours at Judson Secondary Alternative School require you to be present from 7:20 a.m. to 3:30 p.m. _or_ 7:20 a.m. to 3:50 p.m." App'x at Exh. A (Crain Decl.), A-24 (10/6/2014 Level I Response) (emphasis added). But, its Level II Grievance Response noted that his "current work hours at Judson Secondary Alternative School require you to be present from 7:20 a.m. to 3:50 p.m." App'x at Exhs. A (Crain Decl.), A-25 (11/19/2014 Level II Grievance Response).

### D.  Other Teachers Paid $20.00/hour for Supplemental Teaching

19.     In or about September, 2014, Plaintiff learned that white, female professional staff (Michelle Hogan) remained at the $20.00/hour pay rate for work performed for ACE/AC. App'x at Exhs. A (Crain Decl.), A-26 (11/04/2013 JISD Supp'l Pay Report). Thus, Ms. Hogan, a white female, received pay at the $20.00/hour rate for supplemental teaching that occurred outside her primary hours. App'x at Exhs. A (Crain Decl.), A-27 (M. Hogan Pay Sheets). Ms. Hogan, who was paid within the same organization (ACE/AC), was not forced to terminate her employment due to the improperly noticed schedule changes. Dkt. 99-12.

20.     JISD publishes that the Adventure Club After-School Program is part of the Adult & Community Education Department. App'x at Exhs. A (Crain Decl.), A-28 (ACE/AC Org. Chart). In his role at the Adventure Club, Plaintiff was performing the same work (teaching and tutoring), under the same supervision (ACE/AC Coordinator and Student Support Services), as other teachers being paid at the $20.00/hour rate for supplemental teaching occurring outside their primary hours. Thus, Plaintiff was subjected to differing treatment and work standards.

### E.  Plaintiff Blocked from Working at Evening High School

21.     JISD further retaliated against Plaintiff when it denied him the opportunity to work at the Evening High School. Previously, Plaintiff worked from approximately 4:30 p.m.-8:30 p.m.

at the Evening High School. App'x at Exhs. A (Crain Decl.), A-29 (4/16/2013 JSAS Sign-In

Sheet). In June, 2014, Plaintiff had notified Principal Greg Mihleder of his intent to continue work

at the Evening High School for the 2014-2015 term. App'x at Exh. A (Crain Decl.). But, at the

same time JISD changed Plaintiff's work hours, Principal Greg Mihleder and Elida Bera denied

Plaintiff the option to work the hours or the position he previously held for two years. Id. Although

JISD claims the program closed at the end of the Fall semester of 2014, the program actually was

moved to a different location (Northeast Lakeview College), at which Plaintiff could have worked.

Id. In fact, the program was an agenda item at a recent JISD Board of Trustees meeting. App'x at

Exhs. A (Crain Decl.), A-30 (5/18/2017 Board of Trustees Mtg. Agenda).

### F. Plaintiff Experiences Additional Salary Disparities

22.      In response to a request under the Texas Public Information Act, JISD provided

Plaintiff with a spreadsheet containing salary information for certain JISD teachers. App'x at

Exhs. A (Crain Decl.), A-31 (3/21/17 email fr. S. Linscomb, with spreadsheet), A-32 (JISD Salary

Chart). The spreadsheet reflected that Plaintiff (black male, special education in high school)

received a base salary of $55,450.00 for 11 years of service with JISD, whereas Theresa Beitel

(white female, special education in middle school) received a base salary of $55,750 for 5 years of

service with JISD. Id. Based on the information provided by JISD, Plaintiff believed he was not

compensated appropriately based on his years of service and is not receiving proper credit for his

20 years of service. Teacher James Combs (white male, special education in Elementary School)

is receiving a base salary of $56,550.00 for 20 years of service with JISD. App'x at Exh. A (Crain

Decl.), A-31 (3/21/17 email fr. S. Linscomb, with spreadsheet), A-32 (JISD Salary Chart). But,

Combs was Plaintiff's aide for many years and only received his teaching certification within the

last 5 years. App'x at Exh. A (Crain Decl.). Conversely, Plaintiff's service record reflects that for

the 2016-2017 term, he was on the level 16 pay step, which means he is not being given credit for

the 2003-2004 and 2004-2005 terms during which he served as a JISD substitute teacher. App'x at Exh. A (Crain Decl.), A-31 (3/21/17 email fr. S. Linscomb, with spreadsheet), A-32 (JISD Salary Chart). Plaintiff contends he requested salary information from JISD for Beitel and Combs for the year 2010, but JISD would not provide the requested information. App'x Exhs. A (Crain Decl.), B (Crain Depo.) at 158-161. Moreover, JISD Assistant Superintendent Elida Bera admitted during her deposition that salary disparities and favoritism do occur in JISD:

> Page 52
> 19      A. I can tell you that before Dr. Montoya came
> 20      onboard and we started looking at this, there were a
> 21      lot of disparities. Earlier you asked me about
> 22      favoritism or -- it could be that, but that's my -- I
> 23      am making assumptions on this, that some people do get
> 24      paid more than others.
> 25      Q. (BY MR. LANG) And you say that there was –
> Page 53
> 1       there were instances of favoritism --
> 2       A. Yes.
>
> Page 25
> 1       Q. In your many years in professional education,
> 2       have you seen favoritism?
> 3       A. Yes.
> 4       Q. In your many years of professional education
> 5       administration, have you at times viewed arbitrary
> 6       decision-making?
> 7       A. Can you give me an example?
> 8       Q. Sure. Paying one group of people a higher
> 9       wage than another.
> 10      A. Yes.

App'x at Exh. C (Bera Depo.) at 52-53, 25.

### G. **JISD Denies Plaintiff's Application for Extended School Year and Improperly Investigates Plaintiff for Alleged STAAR Testing Violations**

23.     Plaintiff filed the instant lawsuit on August 22, 2016. Dkt. 1. On or about April 12, 2017, Plaintiff filed a grievance with JISD complaining of a recent performance evaluation, unequal pay, and harassment by campus administrators. App'x at Exhs. A (Crain Decl.), A-33

(4/12/2017 Level I Grievance). With respect to unequal pay, Plaintiff complained of his level of pay, as compared to other female educators with less experience. Id.

24.     During the Summer terms of 2014, 2015, and 2016, Plaintiff was employed by JISD in the Extended School Year ("ESY") program, in which Plaintiff provided his services as a professional educator to students during the Summer months when normal school hours are suspended. App'x at Exhs. A (Crain Decl.), A-34 (JISD Employment Notification-Professional). On or about April 21, 2017, Plaintiff applied for a position with the ESY program for the JAC through Sandra Guevara, Aida Nava, Elida Bera, and Monica Rodriguez, administrators for JISD. App'x at Exhs. A (Crain Decl.), A-35 (5/4/2017 email re: ESY), A-36 (5/17/2017 email re: ESY). Plaintiff timely submitted his application for the Summer 2017 term in two different formats – through an email and JISD's electronic filing system. Id.

25.     Plaintiff met all necessary qualifications for the position to which he applied, including having K-12 and Special Education certifications and having three prior years of stellar employment with the ESY program. App'x Exh. A (Crain Decl.). In fact, Plaintiff was the only JAC program teacher who applied to serve JAC students in the ESY program for the Summer 2017 term. App'x Exh. A (Crain Decl.). ESY Coordinator Sandra Guevara and Human Resources Director Monica Rodriguez received Plaintiff's application, but refused to acknowledge the timely-filed application. App'x at Exh. A (Crain Decl.), A-35 (5/4/2017 email re: ESY), A-36 (5/17/2017 email re: ESY).

26.     Despite providing JISD with a completed application before the deadline (which was May 1, 2017) and without notice as to any deficiencies in his application as Coordinator Guevara noted, JISD failed to hire Plaintiff for the ESY program. App'x Exh. A (Crain Decl.). Plaintiff was denied the ESY position despite being the only application submitted on time and according to the application process. Id. JISD Administrator Aida Nava (who serves in a District-

wide human resources position) even admitted that if Plaintiff applied on time to the ESY position, there was no reason he should not have been accepted immediately. App'x Exh. D (Nava Depo.) at 45. Moreover, even after Ms. Nava was made aware that Plaintiff had timely applied to the program, and another human resources administrator had communicated to her Plaintiff's concerns of not being hired into the program, Ms. Nava took no action to address Plaintiff's concerns. Id. at 47-48. Nor did Assistant Superintendent Bera take any action after receiving notice that Plaintiff had timely applied to the program but had not been hired. App'x Exh. C (Bera Depo.) at 57-66.

27.     Even more, after rejecting Plaintiff's application, JISD continued to seek ESY female educators (Tara Dalton) with similar qualifications as Plaintiff. App'x Exh. A (Crain Decl.). JISD was so short staffed to serve the ESY students that it continued to recruit similarly qualified staff the first week of programming. Id. JISD never provided Plaintiff with a reason why he was denied the teaching position. Id. Plaintiff was denied employment consideration immediately after participating in protected activity of filing a grievance complaining of bias in teacher pay scales. Moreover, Plaintiff attempted to submit an application for ESY for the Summer 2018 term, but was blocked from submitting an application. App'x at Exhs. A (Crain Decl.), A-37 (4/28/2018 email re: ESY Applications).

28.     JISD further retaliated against Plaintiff CRAIN by creating and permitting a harassing work environment in retaliation for Plaintiff's opposition to unlawful employment practices and participation in the grievance proceedings. In March 2017, Plaintiff received a formal performance evaluation conducted by JISD administrators, which inaccurately reported Plaintiff's performance in the classroom. App'x at Exhs. A (Crain Decl.), A-38 (T-TESS Eval.). In April and May 2017, JISD administrators made allegations against Plaintiff concerning STAAR testing violations and engaged in investigations of such allegations in a manner that violated District policy. App'x at Exh. D (Nava Depo.) at 64-80; C (Bera Depo.) at 67-71. In August 2016, JISD

subjected Plaintiff to increased scrutiny and evaluations of Plaintiff and his staff, and denied access

to certain facilities. App'x at Exh. A (Crain Decl.). Further, in May 2017 and continuing through

the present, JISD has failed and refused to comply with its obligations under the Texas Public

Information Act to release documents and photographic and videographic materials related to the

foregoing incidents of harassment in response to repeated requests for such materials by Plaintiff.

App'x Exh. C (Bera Depo.) at 70-71. In August 2017, District Human Resource directors Aida

Nava and Monica Rodriquez continued to retaliate and harass Plaintiff as JISD attempted to

reassign Plaintiff CRAIN to a less desirable campus (Wagner HS) which already had an African

American male staff with the same credentials serving as a special education teacher. App'x

Exh. D (Nava Depo.) at 34-37; C (Bera Depo) at 34-39. JISD has taken such actions despite JISD

administrators having never received complaints about Plaintiff's performance in the classroom.

App'x Exh. D (Nava Depo.) at 31-32.

## V.  ARGUMENT AND AUTHORITIES

### A.  Plaintiff Does Not Assert Against JISD Claims Accruing Prior to August 11, 2014.

29.    Plaintiff's claims asserted against JISD did not arise and were not related to his

employment prior to August 11, 2014. At his deposition (taken in September, 2017) Plaintiff was

questioned about the factual basis of his claims against JISD, wherein he testified that allegations

of discriminatory treatment before August 11, 2014 were "completely different" from those that

made the basis for his federal claims brought in this suit against JISD. Plaintiff testified that his

federal claims were based on retaliation suffered after August 11, 2014: "Simply put, we were

resolving an issue for the backpay, but immediately after resolving the issue [concerning backpay

that was resolved through the Grievance Resolution Agreement] I was retaliated against and I lost

– I lost my employment." App'x at Exh. B (Crain Depo.) at 53-55. Thus, although perhaps lacking

precision, Plaintiff testified he was not asserting against JISD any claims or causes of action arising

in any way related to his employment prior to August 11, 2014. And, JISD has no evidence to show that the claims brought by Plaintiff against it arose or were related to Plaintiff's employment with JISD prior to August 11, 2014.

30.     Moreover, Plaintiff's Third Amended Complaint makes clear that the claims asserted against JISD arise from acts and omissions that occurred after August 11, 2014. See Dkt. 94 at ¶ 30 (alleging Equal Pay Act Discrimination through acts and omissions that occurred "after September 2014"); at ¶ 31 (alleging Equal Pay Act Retaliation through acts and omissions that occurred "in April and May 2017"); at ¶¶ 12, 33-34 (alleging Title VII Discrimination through acts and omissions that occurred "in August 2014" and "after September 2014" "immediately after the ACE/AC pay claim grievance was resolved in August 2014"); and ¶ 35 (alleging Title VII and Equal Pay Act Retaliation through acts and omissions that occurred after the agreement was signed "in August 2014 in retaliation for Plaintiff CRAIN's participation in the grievance process that was resolved [] by settlement agreement fully executed on August 11, 2014"). [Dkt. 94.] Thus, JISD has no evidence to show that the claims brought by Plaintiff against it arose or were related to Plaintiff's employment with JISD prior to August 11, 2014.

**B.   Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Title VII and EPA Retaliation Claims Related to the Changes in His Work Hours to Force Termination of His ACE/AC Employment**

31.     Plaintiff asserts claims of Title VII and EPA retaliation based on JISD changing Plaintiff's primary work hours and the ACE/AC check-in and work hours to create a conflict which forced Plaintiff to terminate his ACE/AC employment. Dkt. 94 at ¶ 35. As stated in Plaintiff's disclosures, JISD's unlawful and adverse employment actions cause Plaintiff to suffer the loss of supplementary teaching income in the amount of $27,200, plus accruing front pay.

32.     JISD moves for summary judgment on the claim contending that (1) Plaintiff cannot establish one element of his prima facie case—a causal link between the protected activity

and the adverse employment action; and (2) given JISD's allegedly legitimate, nonretaliatory reasons for the employment action, Plaintiff cannot prove the employer's stated reason for the adverse employment action was merely pretext for the real, retaliatory purpose. Dkt. 99 at ¶¶ 46-48. As addressed herein, fact issues preclude summary judgment on Plaintiff's retaliation claims.

### 1) Fact Issues as to the Causal Connection between Plaintiff's Protected Activity and the Adverse Employment Action Preclude Summary Judgment

33.     "Close timing between an employee's protected activity and an adverse action against [him] may provide the 'causal connection' required to make out a prima facie case of retaliation." Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001) (citations omitted). As detailed above, Plaintiff's pay disparity grievance was resolved by execution of a settlement agreement with JISD on August 11, 2014. App'x at Exhs. A (Crain Decl.), A-10 (Grievance Resolution Agreement). That same week: (1) Plaintiff was notified of a change in check-in and work hours policy at the ACE/AC that prohibited Plaintiff from starting work after 2:30 p.m. and required employees to work the entire block from 2:30 p.m.-6:00 p.m.; (2) Plaintiff was notified his primary work hours at the JAC/JSAS were changed from 6:00 a.m.-2:00 p.m., to 7:00 a.m.-3:30 p.m.; (3) Plaintiff's supervisors, Principal Mihleder and Student Services Executive Director Joe Gonzalez, asked Plaintiff if he intended to work after hours at the ACE/AC and Evening High School; and (4) after answering in the affirmative, Plaintiff was notified his primary work hours at the JAC/JSAS were changed again, from 7:00 a.m-3:30 p.m., to 7:20 a.m.-3:50 p.m. App'x at Exhs. A (Crain Decl.), A-13 (8/13/2014 JSAS Acknowledgment Form), A-16 (8/28/2014 JSAS Acknowledgement Form). Thereafter, then-JISD Superintendent Mackey followed up with a visit to Plaintiff's campus on August 21, 2014, to ensure Plaintiff signed the new acknowledgment form regarding the 7:20 a.m.-3:50 p.m. primary hours schedule. App'x at Exhs. A (Crain Decl.), Exh. A-14 (8/28/2014 email fr. Pl. to G. Mihleder), A-15 (8/20/14 email fr. G. Mihleder to Pl.), and A-16 (8/28/2014 JSAS Acknowledgement Form).

34.     With respect to the significance of the timing of the adverse action against Plaintiff, JISD only addresses the timing of the change in the JAC/JSAS primary work hours. Dkt. 99 at ¶ 47. JISD does _not_ address the timing of the change to the ACE/AC check-in and work hours policy. See id. Plaintiff's summary judgment evidence shows that _right after_ Plaintiff's pay disparity grievance was resolved (with Dr. Willis Mackey executing the resolution agreement on behalf of JISD), Plaintiff was informed of the change to his primary work hours and the change in the ACE/AC check-in and work hours policy. App'x at Exhs. A (Crain Decl.), Exh. A-13 (8/13/2014 JSAS Acknowledgment Form), A-16 (8/28/2014 JSAS Acknowledgement Form). Notably, as far as timing, JISD's summary judgment evidence states only that "[i]n the summer of 2014," Dr. Willis Mackey directed the ACE/AC to set a uniform work schedule. Dkt. 99 at ¶ 9. Thus, a fact issue exists as to the actual timing of the policy change. Taking the facts in the light most favorable to the non-movant, and considering the fact issue as to the actual timing of the policy change, that the check-in policy was changed so "very close in time" to the settlement of Plaintiff's pay disparity grievance that was directly related to Plaintiff's rate of pay with the ACE/AC is sufficient to establish the required causal connection between the protected activity and the adverse employment action. See Washburn v. Harvey, 504 F.3d 505, 511 (5th Cir. 2007) ("Temporal proximity between Washburn's first Title VII suit and the alleged adverse employment actions only can prove the causation element of his prima facie case when the protected act and the adverse employment action are 'very close' in time."); Evans, 246 F.3d at 354 (holding "that a time lapse of five days in this case is sufficient to provide a 'causal connection' that enables Evans to satisfy the third prong of the prima facie case of her retaliation claims").

35.     JISD does argue Plaintiff's primary work hours schedule change actually occurred in May, 2014, and was only implemented in August, 2014. Dkt. 99 at ¶ 47. But, the summary judgment evidence shows that not even Plaintiff's direct supervisor and principal of the JAC/JSAS

campus, Gregory Mihleder, was aware of the purported schedule change as of August 14, 2014.

See Dkt. 99-8 (Principal Mihleder "recommending" that the JAC hours remain at 7:15 a.m.-2:45

p.m.). Presumably, the principal of the campus affected by such a schedule change would have

been notified of such an issue if it actually had been decided three months earlier. In addition,

Plaintiff challenges JISD's summary judgment evidence (Dkts. 99-2 and 99-7) as set forth above

in Section III. For all of these reasons, there are genuine issues of material fact on Plaintiff's prima

facie case of his Title VII and EPA retaliation claim regarding the causal connection between the

protected activity and the adverse employment action.

> **2) JISD's Stated Reason for the Materially Adverse Employment Action Was Pretext for the Real, Retaliatory Purpose – to Prevent Plaintiff from Engaging in Supplementary JISD Work because He Engaged in Title VII- and EPA-Protected Activity**

36.     "Since this case reached the pretext stage, the only question on summary judgment

is whether the evidence of retaliation, in its totality, supports an inference of

retaliation." Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 407 (5th Cir. 1999). "The

combination of suspicious timing with other significant evidence of pretext, can be sufficient to

survive summary judgment." Id. at 409. Plaintiff has presented summary judgment evidence to

show JISD's stated reason for the materially adverse employment action was merely pretext for

the real, retaliatory purpose – to prevent Plaintiff from engaging in supplementary JISD work

because he engaged in Title VII- and EPA-protected activity.

37.     As stated above, there were _two_ different "policy" changes implemented by JISD

to effect Plaintiff's ability to work in the ACE/AC: the change to Plaintiff's primary work hours

at the JAC/JSAS, _and_ the change to the check-in policy for the ACE/AC. Both of these "policy"

changes occurred within a week of the resolution of Plaintiff's pay disparity grievance in August

2014. Significantly, Plaintiff was the only teacher affected by both "policy" changes. App'x at

Exh. A (Crain Decl.). The other individuals identified by JISD as having resigned due to work hours mandate change (see dkt. 99-12) were not certified teachers. Id.

38.    Moreover, the "standard" work hours that JISD contends took effect across approximately 15 elementary schools were **not, in fact, applied equitably**. For example, during the Fall 2014 term, JISD teacher Gale Edwards was permitted to work from 4:00 p.m. to 6:00 p.m. App'x at Exhs. A (Crain Decl.), B (Crain Depo.) at 143, 150; A-22 (G. Edwards Employee Time Sheet). Ms. Edwards taught technology topics to students at the program. App'x at Exh. A (Crain Decl.). Plaintiff also teaches technology topics to students and designs computer-based Individual Education Plans for his students. Id. Thus, Plaintiff was treated differently than those similarly situated.

39.    For each of the reasons set forth above, Plaintiff has shown a fact issue exists as to whether JISD's stated reason for the adverse employment action was pretext for the real, retaliatory purpose. Accordingly, JISD is not entitled to summary judgment on Plaintiff's claims of Title VII and EPA retaliation.

### C. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's EPA Retaliation Claim Related to Plaintiff's Denial of Work for Extended School Year

40.    Plaintiff asserts a claim of EPA retaliation based on JISD's denial of his application to work in the ESY program for the Summer 2017 term, when it did hire teacher Tara Dalton for the same position. Dkt. 94 at ¶ 31.  As stated in Plaintiff's disclosures, JISD's unlawful and adverse employment actions caused Plaintiff to suffer the loss of supplementary teaching income in the amount of $10,000 (consisting of $5,000 for Summer 2017, and $5,000 for Summer 2018[1]), plus

---

[1] Plaintiff's Supplemental Initial Disclosures, served on February 9, 2018, indicated Plaintiff claimed and calculated $5,000, plus accruing front pay, for JISD's failure to hire him for ESY. The summary judgment evidence shows Plaintiff was blocked from submitting an application for ESY for the Summer of 2018. App'x at Exhs. A (Crain Decl.), A-37 (4/28/2018 email re: ESY Applications). Thus, Plaintiff now claims $10,000, plus accruing front pay, in damages on this claim.

accruing front pay. JISD moves for summary judgment asserting that (1) Plaintiff has not exhausted administrative remedies; (2) Plaintiff cannot establish the first and third elements of his prima facie case – that he engaged in protected activity and that there was a causal connection between the adverse action and the protected activity; and (3) Plaintiff cannot show he was retaliated against because the failure of JISD to select Plaintiff for the program was just a miscommunication error. Dkt. 99 at ¶¶ 35-36. As shown below, JISD is not entitled to summary judgment on any such grounds.

### 1) Plaintiff Is Not Required to Exhaust Administrative Remedies on His Equal Pay Act Claims

41.     "In contrast to causes of action brought under Title VII [], Equal Pay Act claims do not require exhaustion of administrative remedies." Stith v. Perot Sys. Corp., 122 Fed. App'x 115, 119 (5th Cir. 2005) (citing Cnty of Wash. v. Gunther, 452 U.S. 161, 175 n. 14 (1981)).[2] And none of the cases cited by JISD in this portion of its motion stand for any contrary proposition. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (addressing exhaustion on Title VII claims); Grice v. FMC Techs., 216 Fed. App'x 401, 406-407 (5th Cir. 2007) (same); Martin v. Lennox Int'l, Inc., 342 Fed. App'x 15, 18 (5th Cir. 2009) (addressing charges of discrimination under the ADA and ADEA). Moreover, Plaintiff timely and properly charged on his Title VII claims at EEOC. See Dkt. 94. Accordingly, JISD's motion for summary judgment on this claim for failure to exhaust administrative remedies should be denied.

### 2) Plaintiff's Summary Judgment Evidence Establishes He Participated in Protected Activity

42.     The Equal Pay Act prohibits an employer from retaliating against an employee "because such employee has filed any complaint or instituted or caused to be instituted any

---

[2] Indeed, JISD sought to dismiss Plaintiff's Title VII claims several times for failure to exhaust administrative remedies, but never sought the same relief with respect to Plaintiff's EPA claims. See, e.g., Dkts. 3, 6.

proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). As JISD correctly points out, an internal complaint may constitute protected activity. See Hagan v. Echostar Satellite, LLC, 529 F.3d 617, 626-27 (5th Cir. 2008).

43.     On April 12, 2017, Plaintiff filed a formal grievance with JISD concerning his pay, stating, among other things:

> I have also been in communication with JISD about salary inequities for 2016-17. I believe I am paid less than others who have less experience than me.

Dkt. 99-22 at 1.[3] JISD contends Plaintiff's formal grievance does not constitute "protected activity" under the EPA because "Plaintiff did not include in his complaint any allegation of potential illegality." Dkt. 99 at ¶ 35. This argument is nonsensical: Plaintiff filed the official grievance for the very purpose of complaining about a pay disparity he thought he was experiencing. There is literally no other reason for Plaintiff to file the formal grievance than to "make an allegation of potential illegality."

44.     Moreover, Plaintiff's formal grievance satisfies the Supreme Court's standard for a complaint under the Equal Pay Act: "[T]he phrase 'filed any complaint' contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011). Plaintiff's filing of a formal grievance with JISD, complaining of salary inequities certainly satisfies this standard of protected activity under the statutory authority.

---

[3] This was the text of Plaintiff's original April 12, 2017 grievance. On May 22, 2017, Plaintiff amended his grievance to add specific allegations about being denied employment with the Extended School Year. Dkt. 99-22 at 2. But, as described above, Plaintiff's original April 12 allegations were sufficient to constitute "protected activity" under the Equal Pay Act, 29 U.S.C. § 215(a)(3).

45.     JISD's reliance on <u>Hagan v. Echostar Satellite, LLC</u>, 529 F.3d 617 (5th Cir. 2008), to distinguish Plaintiff's formal grievance complaining of pay inequities from "protected activity" under the Equal Pay Act is misplaced. In <u>Hagan</u>, the plaintiff (a field service manager) premised his retaliation claim on his request to a human resources manager to speak with plaintiff's subordinates who had posed a legal question to plaintiff concerning their employer's scheduling and overtime policy change. <u>Id.</u> at 620. The Fifth Circuit's decision in <u>Hagan</u> is inapposite to the facts of this case. In <u>Hagan</u>, the Court was evaluating whether a management employee's question to human resources regarding a subordinate's legal question constituted an informal complaint, which required the management employee to "step outside his or her role of representing the company by either filing (or threatening to file) an action adverse to the employer, by actively assisting other employees in asserting FLSA rights, or by otherwise engaging in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." <u>Id.</u> at 628. In this case, Plaintiff filed a *formal* grievance with his employer, through the employer's *formal dispute resolution process*, complaining of pay inequities that are protected by the Equal Pay Act. Plaintiff's summary judgment evidence demonstrates he participated in protected activity under the Equal Pay Act.

### 3) Plaintiff's Summary Judgment Evidence Establishes a Causal Connection between His Protected Activity and the Adverse Employment Action

46.     "Close timing between an employee's protected activity and an adverse action against [him] may provide the 'causal connection' required to make out a prima facie case of retaliation." <u>Evans</u>, 246 F.3d at (5th Cir. 2001) (citations omitted). JISD contends Plaintiff cannot use temporal proximity to demonstrate a causal connection because those involved in the hiring decisions for ESY did not participate in Plaintiff's grievance proceeding. Dkt. 99 at ¶ 36. But, Plaintiff's summary judgment evidence shows that both the Special Education Department and the

Human Resources Department were notified of Plaintiff's application for ESY employment, and Plaintiff's grievance concerning pay inequities.

47.     Plaintiff filed his grievance complaining of pay inequities on April 12, 2017. Dkt. 99-22. On April 21, 2017 Plaintiff applied for a position with the ESY program by submitting his application through email and JISD's electronic filing system; and followed up with numerous administrators (including Sandra Guevara (Special Education Coordinator), Aida Nava (Principal, JCARE), Elida Bera (Assistant Superintendent), and Monica Rodriguez (Director for Employee Relations, Department of Human Resources)),when other employees were receiving notification of hiring decisions and he had not. App'x at Exhs. A (Crain Decl.), A-35 (5/4/2017 email re: ESY), A-36 (5/17/2017 email re: ESY). ESY and Special Education Coordinator Sandra Guevara and Human Resources Director Monica Rodriguez received Plaintiff's application, but refused to acknowledge the timely-filed application. App'x at Exhs. A (Crain Decl.), A-35 (5/4/2017 email re: ESY), A-36 (5/17/2017 email re: ESY). Thus, Plaintiff's summary judgment evidence shows that the Special Education Department, which by JISD's own admission made the ESY hiring decisions, was aware of Plaintiff's grievance concerning pay inequities; and the Human Resources Department, which by JISD's own admission handled Plaintiff's grievance, was aware of Plaintiff's application for ESY employment. See Dkts. 99 at ¶ 36, and 99-19 at 4.

### 4) JISD's Proffered Explanation for Failing to Hire Plaintiff for ESY Program Is Pretext for Retaliation for Participating in EPA-Protected Activity

48.     JISD further contends Plaintiff cannot show JISD retaliated against him because Plaintiff was not hired for the ESY program for the Summer 2017 term "due to a miscommunication between the Special Education Department and the JAC program regarding the online application process." Dkt. 99 at ¶ 36. Once a plaintiff demonstrates a prima facie case of retaliation, the burden shifts to the employer to offer a legitimate, non-retaliatory purpose for the adverse employment action. JISD's proffered explanation—that Plaintiff was not hired due to

a miscommunication—is no explanation at all and fails to satisfy JISD's burden of production, and is actually pretext for retaliation for participating in EPA-protected activity.

49.     As a threshold matter, Mr. Garcia's testimony, upon whom JISD relies for the assertion that the failure to hire was due to a miscommunication, is conclusory, with no facts explaining the miscommunication. See dkt. 99-19 at 4. Moreover, the first time JISD blamed the failure to hire on a "miscommunication" was in these summary judgment proceedings, despite the fact that Plaintiff has been involved in the formal grievance process with JISD for over a year (indeed, the grievance still has not been finally resolved). App'x at Exh. A (Crain Decl.). Indeed, in the Level I and Level II response to Plaintiff's grievance concerning JISD's failure to hire Plaintiff for ESY, there was no mention of any alleged "miscommunication" between the Special Education and JAC programs. Compare dkt. 99 at ¶ 36 (summary judgment motion) with dkt. 99-23 at 2 (Level I response) with dkt. 99-13 at 21-2 (Level II response). Finally, JISD's explanation holds little weight in light of Plaintiff's summary judgment evidence showing that Plaintiff notified JISD (through Sandra Guevara (Special Education Coordinator), Aida Nava (Principal, JCARE), Elida Bera (Assistant Superintendent), and Monica Rodriguez (Director for Employee Relations, Department of Human Resources)) of his submitted application for the program, was the only qualified applicant from JAC for the ESY program, and had taught in the program for the last several years. For all of the foregoing reasons, Plaintiff has shown that JISD's explanation for failing to hire him for the ESY program was pretext for retaliation for participating in EPA-protected activity. Genuine issues of material fact preclude summary judgment.

### D.  JISD Cannot Show There Is an Absence of Fact Issues as to Plaintiff's Title VII Discrimination Claims

50.     Plaintiff asserts claims of Title VII race and sex discrimination based on JISD changing Plaintiff's work hours to create a conflict which forced Plaintiff to terminate his ACE/AC employment; and requiring Plaintiff to receive a lower hourly rate than white, female teachers.

23

Dkt. 94 at ¶¶ 32-35. As stated in Plaintiff's disclosures, JISD's unlawful and adverse employment actions regarding the hours change caused Plaintiff to suffer the loss of supplementary teaching income in the amount of $27,200, plus accruing front pay; and the unlawful and adverse employment actions regarding the pay rate decrease caused Plaintiff to suffer the loss of additional supplementary teaching income, plus accruing front pay. JISD moves for summary judgment on the claims, contending that (1) Plaintiff cannot establish one element of his prima facie case—that other individuals, not in the protected class, who were similarly situated, were treated more favorably, dkt. 99 at ¶¶ 43-44; and (2) JISD had legitimate, nondiscriminatory reasons for its employment action, dkt. 99 at ¶ 45.

### 1) Hours Change and Forced Termination of Employment

51.     As detailed above, Plaintiff's summary judgment evidence shows that another individual, not in the protected class, who was similarly situated, was treated more favorably regarding the schedule changes for primary work hours and ACE/AC work hours. Even though Plaintiff (black, male teacher) was not permitted to begin working after the new 2:30 p.m. check-in time, Gale Edwards (black, female teacher) was permitted to work from 4:00 p.m. to 6:00 p.m. App'x at Exhs. A (Crain Decl.), B (Crain Depo.) at 143, 150; A-22 (G. Edwards Employee Time Sheet). Both Plaintiff and Ms. Edwards were employed by ACE/AC; both reported to the same supervisors in the program; and both taught computer and technology subjects to students. The summary judgment evidence demonstrates a fact issue on Plaintiff's prima facie case for Title VII discrimination.

52.     JISD contends that its legitimate, non-discriminatory reason for the change in Plaintiff's work hours was that "JISD implemented standardized staff hours for all of its Adventure Club sites." Dkt. 99 at ¶ 45. JISD offers no further explanation for the policy changes and impact to Plaintiff. See id. But, this explanation is insufficient to entitle JISD to summary judgment. As

24

stated above, there were _two_ different "policy" changes implemented by JISD to effect Plaintiff's ability to work in the ACE/AC: the change to Plaintiff's primary work hours at the JAC/JSAS, _and_ the change to the check-in policy for the ACE/AC. Both of these "policy" changes occurred within a week of the resolution of Plaintiff's pay disparity grievance in August 2014. Significantly, Plaintiff was the only teacher affected by both "policy" changes. App'x at Exh. A (Crain Decl.). The other individuals identified by JISD as having resigned due to work hours mandate change (see dkt. 99-12) were not certified teachers. Id.

53.     Moreover, the "standard" work hours that JISD contends took effect across approximately 15 elementary schools were not, in fact, applied equitably. For example, during the Fall 2014 term, JISD teacher Gale Edwards was permitted to work from 4:00 p.m. to 6:00 p.m. App'x at Exhs. A (Crain Decl.), B (Crain Depo.) at 143, 150; A-22 (G. Edwards Employee Time Sheet). Ms. Edwards taught technology topics to students at the program. App'x at Exh. A (Crain Decl.). Plaintiff also teaches technology topics to students and designs computer-based Individual Education Plans for his students. Id.

54.     For each of the reasons set forth above, Plaintiff has shown a fact issue exists as to whether JISD's stated reason for the adverse employment action was pretext for the real, discriminatory purpose. Accordingly, JISD is not entitled to summary judgment on Plaintiff's claims of Title VII discrimination.

**2) Similarly Situated White Females Paid at Higher Rate than Plaintiff**

55.     In the absence of JISD's unlawful discrimination and retaliation against Plaintiff, Plaintiff would have continued working at the ACE/AC program. Plaintiff's Title VII discrimination allegations concerning the ACE/AC rate of pay after September 2014 pertain to Plaintiff's earning power in that program, but for JISD's unlawful discrimination related to changing is work hours. "[T]he goal of Title VII is to restore an employee who has

been discriminated against to his or her rightful place by making the employee financially whole again." Gloria v. Valley Grain Prod., Inc., 72 F.3d 497, 499 (5th Cir. 1996). Plaintiff's summary judgment evidence shows that other individuals, not in the protected class, who were similarly situated, were treated more favorably regarding the ACE/AC rate of pay. Even though Plaintiff black, male teacher) would have been placed at the $9.00/hour rate, Michelle Hogan (white, female teacher) was paid $20.00/hour for the same type of work, under the same supervision as Plaintiff. Both Plaintiff and Ms. Hogan were employed by ACE/AC; both reported to the same supervisors in the program; and both taught computer and technology subjects to students. The summary judgment evidence demonstrates a fact issue on Plaintiff's prima facie case for Title VII discrimination.

56.     JISD challenges Plaintiff's Title VII discrimination claim based on ACE/AC program pay rate based only on Plaintiff's prima facie case. See Dkt. 99 at 44. JISD does not offer any allegedly legitimate, nondiscriminatory reason for the employment action. See id. at ¶ 45. Since Plaintiff has demonstrated a fact issue as to his prima facie case for Title VII discrimination, JISD is not entitled to summary judgment.

**E.  There Are Genuine Issues of Material Fact That Preclude Summary Judgment on Plaintiff's Equal Pay Act Discrimination Claims**

57.     Plaintiff alleges JISD violated the Equal Pay Act and discriminated against Plaintiff by (1) paying him a salary amount less than female teaching staff with less experience after September 2014; and (2) requiring him to accept an hourly rate that is less than that paid to female teaching staff at the ACE/AC ($9.00/hour instead of $20.00/hour) for work after September 2014. JISD's unlawful and adverse employment actions regarding the hours change caused Plaintiff to suffer the loss of teaching income and supplementary teaching income, plus accruing front pay. JISD moves for summary judgment contending "that there are no female comparators working in

a position requiring equal skill, effort, and responsibility under similar working conditions." Dkt. 99 at 28.

58.     With respect to the ACE/AC wage rate, Plaintiff's summary judgment evidence establishes that such female comparators existed and were treated more favorably by JISD. As detailed above, while Plaintiff was employed with the ACE/AC program, his duties included teaching and tutoring students (including subjects such as computer skills), which required Plaintiff to utilize his professional teaching skills and background. App'x at Exhs. A (Crain Decl.), A-4 (9/5/2013 Email to HR Dir. Howard); A-5 (Tutoring Sign-In Sheet). JISD relied on Plaintiff to use his "expertise" to improve the program and the services it offered to students. App'x at Exh. A (Crain Decl.), A-6 (9/8/2008 Email fr. D. Hanz). Michelle Hogan, a white, female professional teacher, remained at the $20.00/hour pay rate for work performed for ACE/AC after September 2014. App'x at Exhs. A (Crain Decl.), A-26 (11/04/2013 JISD Supp'l Pay Report), A-27 (M. Hogan Pay Sheets). Thus, Ms. Hogan, a white, female professional teacher, received a pay rate of $20.00/hour for supplemental teaching that occurred outside her primary hours.[4] Id. Further, JISD publishes that the AC program is part of the ACE umbrella, with the AC staff reporting to the same supervisory personnel as the ACE staff – Joe Gonzalez, Executive Director of Student Support Services. App'x at Exhs. A (Crain Decl.), A-28 (ACE Organizational Chart). In his role at the Adventure Club, Plaintiff's duties included performing the same work (teaching and tutoring), under the same supervision (ACE Coordinator and Student Support Services), as other female teachers being paid at the $20.00/hour rate for supplemental teaching occurring outside their primary hours.

---

[4] JISD distinguishes Plaintiff's pay scale from that of Norma Rivas, a cafeteria manager. Dkt. 99 at ¶ 31. Plaintiff's references to Ms. Rivas in his Third Amended Complaint were provided for historical context and to rebut any potential argument by JISD that the reduction in Plaintiff's hourly wage rate was an effort to reduce the District's budget and overhead. According to Plaintiff's evidence, Ms. Rivas experienced preferential treatment, despite not adhering to the August 2014 policy changes regarding ACE/AC attendance hours. App'x at Exh. A-39 (Materials related to N. Rivas).

59.     With respect to his salary, Plaintiff asserts that only recently was Plaintiff provided with the JISD salary information necessary to conduct an assessment of possibly salary disparities. App'x at Exh. A (Crain Decl.). Upon review of documents produced by JISD, there appear additional individuals who may receive higher pay than Plaintiff. For example, in response to a request under the Texas Public Information Act, JISD provided Plaintiff with a spreadsheet containing salary information for certain JISD teachers. App'x at Exhs. A (Crain Decl.), A-31 (3/21/17 email fr. S. Linscomb, with spreadsheet), A-32 (JISD Salary Chart). The spreadsheet reflected that Plaintiff (black male, special education in high school) received a base salary of $55,450.00 for 11 years of service with JISD, whereas Theresa Beitel (white, female, special education in middle school) received a base salary of $55,750 for 5 years of service with JISD. Id. Based on the information provided by JISD, Plaintiff believed he was not compensated appropriately based on his years of service and is not receiving proper credit for his 20 years of service. Teacher James Combs (white male, special education in Elementary School) is receiving a base salary of $56,550.00 for 20 years of service with JISD. App'x at Exhs. A (Crain Decl.), A-31 (3/21/17 email fr. S. Linscomb, with spreadsheet), A-32 (JISD Salary Chart). But, Combs was Plaintiff's aide for many years and only received his teaching certification within the last 5 years. App'x at Exh. A (Crain Decl.). Conversely, Plaintiff's service record reflects that for the 2016-2017 term, he was on the level 16 pay step, which means he is not being given credit for the 2003-2004 and 2004-2005 terms during which he served as a JISD substitute teacher. App'x at Exhs. A (Crain Decl.), A-31 (3/21/17 email fr. S. Linscomb, with spreadsheet), A-32 (JISD Salary Chart). Plaintiff contends he requested salary information from JISD for Beitel and Combs for the year 2010, but JISD would not provide the requested information. App'x Exhs. A (Crain Decl.), B (Crain Depo.) at 158-161.

**F.  Evening High School Claims**

60.     JISD does not move for summary judgment on Plaintiff's claims based on his loss of Evening High School income. Dkt. 94 at ¶¶ 13- 14, 31, 35. See also Plaintiff's Supplemental Initial Disclosures, served Feb. 9, 2018. Accordingly, that claim, which has caused Plaintiff suffered $12,000 in lost supplementary teaching income, remains.

**G.  Retaliatory Work Environment Claims**

61.     JISD contends Plaintiff's claims related to "hostile" work environment must be dismissed based on a failure to exhaust administrative remedies. Dkt. 99 at 38. But, Plaintiff filed his Charge with the EEOC on January 27, 2015, alleging discrimination based on Race, Color, Sex, Retaliation, and Equal Pay, and a retaliatory work environment (micromanagement, threatening Plaintiff with termination, etc.), and hours change that resulted in termination of his employment from ACE/AC, and decrease in rate of pay due to participation in protected activity. Dkt. 99-39. Plaintiff filed a subsequent charge on November 17, 2015, which alleged the same claims and same factual bases. Dkt. 99-40. The Department of Justice issued Plaintiff a Notice of Right to Sue on May 5, 2017. Dkt. 36-1 at 4. Examining Plaintiff's charging documents, there is no doubt that retaliation was clearly charged and plead in the complaints. See Dkt. 94 at ¶¶ 23-28.

62.     The Fifth Circuit "interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006) (citations omitted). Moreover, when a claim is not expressly brought up in the charge, it is not subject to dismissal if it is "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970). Under this standard, Plaintiff's retaliatory work environment claims are properly before this Court. Plaintiff asserted claims of retaliatory work

environment in his EEOC charge ("Ms. Triana seemed to have a problem with Black males and demonstrated that daily in that she micromanaged me, accused me of stealing time, reduced my pay and constantly threatened me with termination or job reassignment"), and the events underlying his federal retaliatory work environment claims were related to the charged events (as they were carried out by JISD employees and agents) (see App'x at Exh. B (Crain Depo.) at 49, 54), and occurred after the charge was submitted (increased scrutiny in August 2016, allegations of testing violations and related investigations in April and May 2017, increased evaluations in March 2017, denial of access to facilities in August 2016, and attempting to reassign Plaintiff in August 2017), but before the EEOC relinquished jurisdiction of the matter (May 7, 2017).[5]

63.    JISD's denial of Plaintiff's application for the ESY program, inaccurate performance evaluation, allegations of STAAR testing violations, increased classroom scrutiny and denial of access to facilities, and attempts to reassign Plaintiff to a less desirable campus, all occurred after Plaintiff filed his EEOC charges, but are demonstrable retaliation due to Plaintiff's complaints about unequal pay, the filing of his grievances, and filing this federal suit, in violation of Title VII and EPA. App'x at Exhs. A (Crain Decl.), A-38 (T-TESS Eval.), D (Nava Depo.) at 34-37, 64-80; C (Bera Depo.) at 34-39, 67-71. Nonetheless, Plaintiff did charge on JISD's retaliation that occurred after he participated in grievance proceedings with JISD. See dkts. 99-39 and 99-40; dkt. 94 at ¶¶ 23-28. The evidence of retaliatory denial of participation in the ESY summer program resulted in loss of compensation to Plaintiff and is an ultimate employment decision. Further, Plaintiff has provided summary judgment evidence of mental anguish, loss of enjoyment of life, and a claim for compensatory damages resulting from the foregoing retaliatory conduct that is actionable under Title VII's and the EPA's anti-retaliation provisions. App'x at

_____
[5] JISD argues that these related events are not "ultimate employment actions and are therefore insufficient to establish a claim for Title VII discrimination." Dkt. 99 at ¶¶ 40-41. But, Plaintiff relies on such allegations as part of his retaliation claims after Plaintiff engaged in protected activity under Title VII and the EPA.

Exhs. A (Crain Decl.) ¶ 24. Accordingly, JISD has failed to show it is entitled to summary judgment on such claims.

## VI. CONCLUSION

64.     For all the foregoing reasons, Plaintiff has shown there are genuine issues of material fact as to each of Plaintiff's claims of Equal Pay Act discrimination and retaliation, and Title VII discrimination and retaliation., and that JISD is not entitled to summary judgment. Accordingly, Plaintiff asks the Court to deny Defendant's Motion for Summary Judgment in its entirety.

## VII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff ALTON CRAIN requests that the Court deny Defendant Judson Independent School District's Motion for Summary Judgment (Dkt. 99), and grant such other and further general relief at law or in equity to which Plaintiff ALTON CRAIN is justly entitled.

Respectfully submitted,

LANG LAW FIRM, PC
10500 Heritage Blvd., Suite 200
San Antonio, Texas 78216
Telephone: (210) 479-8899
Telecopier: (210) 479-0099

By:   /S/ MEAGAN M. GILLETTE
          SYLVAN S. LANG, JR.
          State Bar No.  11898700
          Email: sylvan@langfirm.com
          MEAGAN M. GILLETTE
          State Bar No.  24050659
          Email:  meagan@langfirm.com

ATTORNEYS FOR ALTON CRAIN

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing *Plaintiff's Response to Defendant's Motion for Summary Judgment* has been served on the following counsel of record on this the 3rd day of August, 2018 via the Court's CM/ECF system:

Donald Craig Wood        Email: cwood@wabsa.com
Katie E. Payne           Email: kpayne@wabsa.com
WALSH, GALLEGOS, TREVINO
        RUSSO & KYLE, P.C.
1020 N.E. Loop 410, Suite 450
San Antonio, Texas 78209

                         /S/ MEAGAN M. GILLETTE
                         SYLVAN S. LANG, JR.
                         MEAGAN M. GILLETTE