# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALTON CRAIN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-16-CV-832-XR |
| | § | |
| JUDSON INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

On this date, the Court considered Judson Independent School District's Motion for Summary Judgment (docket no. 99), Plaintiff Alton Crain's Motion for Summary Judgment on Defendant's Counterclaim (docket no. 98), and Plaintiff's Motion to Strike New Evidence Submitted with JISD's Reply Brief, or in the alternative, Motion for Leave to File Sur-Reply (docket no. 107).

## Background

Plaintiff Alton Crain is an African-American male teacher employed by Judson Independent School District ("JISD"). Plaintiff was on JISD's substitute teacher list during the 2003-2004 school year, and was hired by JISD as a teacher beginning with the 2005-2006 school year. As a classroom teacher, he is employed each year under a one-year term educator contract. For the last several years, he has been employed as a secondary teacher at JISD's Judson Achievement Center ("JAC") program, and is employed for the 2018-2019 school year.

The JAC is housed on the same campus as the Judson Secondary Alternative School ("JSAS"). Def. Ex. A.[1] The JAC is an alternative intervention program for students in all grade levels who have behavioral and/or emotional difficulties that require a structured therapeutic learning environment. *Id.* The goal for all students at JAC is to return to their general education campuses as quickly as possible. *Id.*

Beginning in 2008, Crain also began working in the Adventure Club, an after-school program provided by JISD, in addition to his full-time teaching job at the JAC. Adventure Club ("AC") was part of the same department as the Adult Community Education ("ACE") program and operated at various JISD campuses. Crain worked at the Adventure Club from approximately 2:30 to 4:30 p.m. He alleges that, for some years, he was paid $20 per hour, but his pay was reduced to $9 per hour in 2012 and he was informed that he was not eligible for overtime pay. Pl. Ex. A. Plaintiff believed that his pay rate change was motivated by discriminatory animus and/or retaliation and that other employees continued to receive overtime pay.

In September 2013, Crain filed a grievance with JISD concerning alleged adverse actions and retaliatory acts occurring from 2009 to 2013. Def. Ex. A-3; Pl. Ex. A-9. In the grievance complaint, he wrote that he made claims in 2008 that African-American men were being discriminated against, that his claims were investigated and found to be factual, and that he was allowed to keep his position. He further alleged that after his claims of unfair treatment, "a pattern of retaliatory acts have been documented." He requested "fair pay for the professional services I've provided."

---

[1] Plaintiff's objections to Defendant's Exhibit A and its supporting exhibits for lack of personal knowledge and lack of authentication are overruled.

In May 2014, JISD administrators had discussions about several topics relevant to the JSAS and JAC, which are housed on the same campus. Def. Ex. A. One topic was start and end times for the campus, and it was decided to seek approval to extend classes to seven periods and use the middle school schedule (8 a.m. to 3:30 p.m.) for the JAC and JSAS, which is used for JISD's five middle schools. Def. Ex. A, A-5. The middle school schedule was implemented for the 2014-2015 school year, and affected all JAC/JSAS teachers and staff. Def. Ex. A, A-6, A-7.

That same summer, at the request of the JISD Board of Trustees, former Superintendent Dr. Willis Mackey (as African-American male) directed the Adult & Community Education Coordinator (Diana Hanz) and the Adventure Club Liaison (Gloria Triana) to revise the work schedule of all Adventure Club employees. Def. Ex. A. The primary purpose of the work schedule revision was to create uniformity across all Adventure Club sites, and all Adventure Club employees were required to sign a form acknowledging the work schedule and compensation rates. Def. Ex. A, A-8. The hours requirements were set out in the Adventure Club Employee Policy Manual for the 2014-2015 school year. Def. Ex. A, A-9. The Policy Manual required employees to be available for all operational hours, which were 2:30 to 6:00 p.m. for aides, and to sign in and remain on campus during assigned duty hours. Def. Ex. A-9. As will be discussed, Plaintiff Crain and at least twenty other employees working at Adventure Club sites were no longer able to work for the program due to the new hours requirements. Def. Ex. A, A-10.

In August 2014, Crain settled his grievance related to his Adventure Club pay and other claims and signed a Grievance Resolution Agreement approved and signed by Dr. Willis

Mackey, then-Superintendent of JISD. In the Agreement, Plaintiff (1) agreed to withdraw his September 2013 grievance relating to events occurring from May 2009 through August 2013; (2) accepted $8,800 in exchange for withdrawing his grievance; (3) released all causes of action, known or unknown, existing or to exist, "based upon any act or omission up to the execution of the agreement"; (4) agreed "to refrain from instituting, prosecuting, pressing, or in any way aiding in the institution or prosecution of any suit, claim, action, appeal or administrative proceeding against the Judson ISD . . . for any claim or cause of action arising from or in any way related to Employee's employment up to the date of this agreement"; and (5) in the event that Crain violated the prior term, agreed to defend, hold harmless and indemnify JISD from any and all demands, claims, suits, actions, judgments, expenses and attorney's fees incurred in any legal proceedings brought by Crain arising from or in any way related to Crain's employment or cessation of employment with JISD, including but not limited to any and all costs incurred to defend any such claims. Pl. Ex. A-10. However, Crain did "not release or waive any rights or claims that arise subsequent to the date this Agreement [was] executed, including any rights to enforce this Agreement and any disputes relating to his future employment or compensation." Pl. Ex. A-10.

Plaintiff signed the Agreement on August 5, 2014, and Dr. Mackey signed it on August 11, 2014, and Crain received his settlement payment. At that time, Plaintiff intended to continue working at the Adventure Club. His primary JISD work hours had been 6:00 a.m. to 2:00 p.m.. This allowed him to ride the morning bus with the special education students to help maintain discipline, then work at JAC, then work at the Adventure Club from approximately 2:20 p.m. to 4:20 p.m., and then teach at the evening high school from 4:30

p.m. to 8:30 p.m. However, because of the work hours revision to the Adventure Club and a change in his JAC schedule that both occurred right after his grievance was resolved, he was no longer able to work at the Adventure Club.

It is undisputed that Diana Hanz issued a memorandum to Adventure Club employees on August 12, 2014 asking all Adventure Club employees to acknowledge the required work schedule and compensation for all supervisor and aide positions. Def. Ex. A-8. The memo set work times for Adventure Club Technology Aides from 2:30 to 6 pm and stated that "employees who also work in other capacities within Judson ISD will not be allowed to leave their primary assignments early or report late to Adventure Club." *Id.* It also set a rate of $9/hour for aides, noting that exempt employees would not be paid overtime. *Id.*

At the same time, Plaintiff was presented with a form to indicate his acknowledgement of his JAC work hours of 7:00 a.m. to 3:30 p.m. Pl. Ex. A-13 (signed August 13, 2014). Plaintiff asserts that, shortly after that, he was asked by Principal Greg Mihleder and Student Services Executive Director Joe Gonzalez if he intended to work after hours at the Adventure Club and evening high school, and after he responded affirmatively, his primary work hours at JAC were again changed to 7:20 a.m. to 3:50 p.m. Plaintiff signed a new form acknowledging his 7:20 to 3:50 work hours on August 28, 2014. Pl. Ex.-16. Plaintiff complains that the change in his primary work hours made it impossible for him to continue working at the Adventure Club. Plaintiff reported for work at Adventure Club on August 25, 2014, and was told that he was not permitted to work if he checked in after 2:30 p.m., and Plaintiff alleges that he was effectively terminated from Adventure Club that day.[2]

---

[2] Plaintiff applied for unemployment benefits with the Texas Workforce Commission related to his Adventure Club work, but benefits were denied because JISD argued that he was still employed full-time with JISD.

Plaintiff complains that JISD instituted a pretextual policy change on August 12, 2014, one day after his grievance was resolved by agreement, that required staff to be in place for Adventure Club from 2:30 p.m. to 6:00 p.m. and simultaneously changed his primary work hours as discrimination and retaliation. Plaintiff alleges that female employees were permitted to arrive at Adventure Club after 2:30 p.m. while he was not.

It is undisputed that, that fall, Plaintiff continued working at the Judson Evening High School at the rate of $25 per hour.[3] JISD asserts Plaintiff no longer worked at the evening high school after that because the program was terminated at the end of the semester. Def. Ex. A. Plaintiff asserts that it was moved to a different location (Northeast Lakeview College), at which he could have worked, but Principal Greg Mihleder and Assistant Superintendent Elida Bera denied him "to option to work the hours or the position he previously held." Third Am. Compl. ¶ 14; docket no. 102 at 8.

On September 12, 2014, Plaintiff filed a grievance with JISD regarding the change in hours and his inability to work at Adventure Club. Pl. Ex. A-23. Plaintiff wrote, "On August 25, 2014 I was informed that I had been terminated from my position with the Adventure Club. I believe that this action was in continuing retaliation for filing complaints regarding racial discrimination, including the grievance that was decided by the Board in June of this year." *Id.* Plaintiff noted that he had discussed his concerns regarding harassment, discrimination, and bias in pay, hours, classification, and treatment during his grievance process, and his hours were then altered to reduce his earning opportunities and he was

---

[3] JISD's 2014-2015 Compensation Plan provides that "[s]upplemental pay for educators to perform duties outside of the regular workday and or contract period will be in the amount of $25.00 per hour for teachers and $35 per hour for administrators." Def. Ex. B-14.

terminated from Adventure Club. *Id.* He sought reinstatement and back pay and "effective measures to ensure that no further discriminatory or retaliatory actions occur." *Id.*

On November 12, 2014, JISD submitted a grievance resolution proposal to allow Plaintiff to work at an Adventure Club at a different elementary school from 4 to 6 p.m. until the end of the school year for $9/hour, in exchange for a full release, but Plaintiff did not accept the offer. Def. Ex. A-16. Plaintiff alleges that a white female professional, Michelle Hogan, remained at the $20 rate of pay for work performed at the Adult & Community Education Center, which was part of the same organization as the Adventure Club, and was not forced to terminate her employment due to the allegedly improperly noticed schedule changes. Plaintiff alleges that JISD attempted to change his job title from "teacher/tutor" to "aide" to justify the $9 pay rate, but continued to pay Hogan $20 per hour. Third Am. Compl. ¶¶ 16-17. Plaintiff further alleges that JISD asserted that it wanted to reduce overtime employee pay but continued to allow Norma Rivas, a cafeteria manager, to receive overtime compensation for work at Adventure Club. *Id.* ¶ 17. Plaintiff alleges that the reduction in pay to $9 was retaliatory for participating in protected activity. *Id.*

Superintendent Mackey provided a Level II Grievance Response on November 19, 2014. Def. Ex. A-15. He found that Plaintiff was not discriminated against, and stated that the District would not deviate from the new policies. He also noted that the grievance investigation revealed that "the current policies concerning the hours employees were clocking in [at Adventure Club] were not being adhered to," and that "this issue has been addressed and dealt with." Def. Ex. A-15. Because the hours sign-in policy was not being adhered to, Adventure Club Liaison Gloria Triana was terminated, and Coordinator Diana Hanz was

issued a letter of counsel directing her to ensure compliance with the policy by all Adventure Club staff. Def. Ex. A.

Plaintiff appealed to a level III grievance. The Board of Trustees held a hearing in January 2015 and unanimously voted to deny relief. On January 27, 2015, Plaintiff filed an EEOC charge (docket no. 94-1, docket no. 99-39), asserting discrimination based on race, sex, retaliation, and equal pay. In the box for "Date(s) Discrimination Took Place," Crain put May 24, 2009 to August 24, 2014. He recounted his complaint filed in September 2013 and noted that he received $8,800 in back pay on or about August 11, 2014 for the claim related to his reduction in pay, but stated that his "employer refused to admit or respond to the race and gender part of my complaint."

He then noted that "[a]fter on or about August 12, 2014, there was a policy change that identified staff to be in place for the Adventure Club no later than 2:30 pm and that I would have to accept $9 per hour for continued employment" and that "[c]oincidentally, at that same time, my day schedule was changed from 7:20 am to 3:50 pm which then made it impossible for me to leave my day schedule and report to the Adventure Club by 2:30 pm." He wrote, "I believe they purposely changed this schedule to keep me from going to the Adventure Club" while "a female was allowed to arrive at the Adventure Club at 4pm whereas I was not allowed" and "there was a White female who started at the $20 per hour rate whereas I had been reduced to $9.00 per hour." He further stated, "I believe I have been discriminated against because of my race (African American), my sex (male), and was not paid equal pay in violation of Title VII of the Civil Rights Act of 1964, as amended and in violation of the Equal

Pay Act of 1963. I also believe I was retaliated against for making a protected complaint and opposing discriminatory actions of the management over me."[4]

In August 2016, Crain filed this lawsuit *pro se*, asserting claims against JISD under Title VII and the Equal Pay Act. Crain used a form civil rights complaint, which stated that Defendant discriminated against him in the manner indicated in paragraph 8 on or about August 24, 2014. Paragraph 8 indicated that JISD terminated him after participating in a formal grievance process in August 2014. He complained that he was retaliated against through termination and harassment after the formal grievance process. The form complaint included a space that allowed the plaintiff to indicate other incidents of discrimination if discrimination occurred on more than one day, and Crain wrote in "August 2013, August 2012." Further, in section 8a, where a plaintiff is to state specifically the circumstances under which the defendant discriminated, the form instructs the plaintiff to include specific dates and events pertaining to the alleged discrimination. Crain wrote a series of dates and events spanning May 23, 2009 to August 24, 2014, when he was terminated.[5] Crain also noted on the form that he had filed charges with the EEOC on January 27, 2015. At the time he filed suit, he not yet received a right to sue notice from the EEOC on his claims.

On September 20, 2016, the EEOC issued a right to sue notice on the EPA claim, but stated that it would continue to investigate the Title VII allegations. Docket no. 94-2. Because the Title VII claims were not yet fully exhausted, the Title VII claims were dismissed without prejudice.

---

[4] On November 7, 2015, Plaintiff filed an Amended EEOC charge. Docket no. 94-1. However, there does not appear to be any difference between that charge and his January 2015 charge.
[5] In his current Complaint, he alleges that he was effectively terminated on August 25, 2014.

On February 21, 2017, JISD counterclaimed, asserting a claim for breach of contract and arguing that Plaintiff had breached the Grievance Resolution Agreement by bringing employment claims based on events occurring before August 11, 2014. Crain answered the counterclaim, stating that his claim "was made after the agreement in September of 2014, when the Plaintiff discovered discriminatory bias in pay and hour." Docket no. 32. Crain noted that he did not waive his rights or release claims that may arise subsequent to August 11, 2014, and that he learned after August 11, 2014 that "JISD Adult and Community Education decision makers . . . continued discrimination in pay, hours, and flexibility within the same organization," specifically that female teachers were being paid $20. *Id.* Crain noted that he followed the instructions on the form Civil Rights Complaint to include specific dates and "[a]ll documents submitted to the Court were of history relevance per the instructions set forth in the EEOC Complaint Packet, question 8a." *Id.* He stated that he submitted documents and supporting evidence to establish credibility, but that his claim was for equal pay after the August 11, 2014 agreement. Crain denied that he had materially breached the Agreement "by simply responding honestly to the complaint questionnaire." *Id.*

On April 12, 2017, Plaintiff filed a third grievance with JISD complaining of various issues, including his salary and his belief that he was being paid less than others with less experience. He also complained about his T-TESS appraisal on March 22, 2017 ("formalized on April 12, 2017") and "continuing administrator difficulties." Def. Ex. B-3.

On or about April 21, 2017, Plaintiff applied for a position with the Extended School Year ("ESY") program, a program in which he had taught during the summers of 2014, 2015, and 2016. Plaintiff alleges that he applied for the position "through Sandra Guevara, Aida

Nava, Elida Bera, and Monica Rodriguez," administrators for JISD, and that he timely submitted his application in two different formats – through email and through JISD's electronic filing system. Third Am. Compl. ¶ 24; Pl. Ex. A (Crain affidavit). Crain provides an email from Michelle Hilliard, Lead Special Education Coordinator, notifying him and others that ESY applications were available on Eduphoria and would be accepted until April 30. Pl. Ex. A-37. Plaintiff responded to Hilliard's email on April 28 stating that the "application does not exist on Eduphoria," that he had "attempted to apply but the application process you described seemed to be blocked from my view." *Id.* Plaintiff states that he also emailed Michelle Hilliard and Sandra Guevara on May 4 and May 11 about his application. Pl. Ex.-A35, A-36.

Plaintiff asserts that he was qualified for the position and was the only JAC teacher who applied, yet ESY Coordinator Sandra Guevara and Human Resources Director Monica Rodriguez refused to acknowledge his timely filed application despite receiving it before the deadline. Plaintiff alleges that, despite denying his application and being aware that Plaintiff has submitted a timely application, JISD took no action to address Plaintiff's concerns, continued to recruit staff for the position, and never provided him a reason for the denial of his application. Plaintiff alleges that the denial was in retaliation for submitting his grievance, and that he was later blocked from submitting an application for ESY for the summer 2018 term.

On May 5, 2017, the EEOC issued a right to sue notice for Plaintiff's Title VII claims.

On May 22, 2017, Plaintiff amended his grievance to add that his application to work for the ESY program had been denied due to retaliation or "some other form of discrimination." Def. Ex. B-3. He also alleged that, on May 4, 2017, Principal Nava had

"asked a student to make a claim against me that I was using my cell phone during STAAR testing," that the claim was false, and that Nava "did this in retaliation for filing this grievance and asserting my rights, or because of some other form of discrimination." *Id.* Plaintiff asked that he be given a more accurate and better T-TESS appraisal, that his 2016-2017 salary be raised to reflect his years of experience, and that Nava be directed not to appraise him or retaliate against him. *Id.* Plaintiff complains that the March 2017 evaluation, the STAAR testing allegations, actions taken in August 2016 (increased scrutiny and denial of facility access), and an attempt to have him reassigned to a less desirable campus in August 2017 were retaliation and harassment creating a hostile work environment.

A Level 1 grievance conference was held on May 23, 2017, during which Plaintiff presented a spreadsheet of employees with "years JISD experience" that formed the basis of his belief that he was being paid less than others with fewer years of experience. Def. Ex. B. JISD investigated and Principal Nava provided a written response, ruling that Plaintiff was being paid correctly because salary was based on total years of teaching experience and not just years of JISD teaching experience. Def. Ex. B, B-4, B-5. With regard to Plaintiff's complaint about his application for ESY being denied as retaliation, Nava informed Plaintiff that she was not "part of the approval path for the Extended Year Application," as decisions were made by the Special Education Department. Ex. B, B-4.

Nava also denied asking a student to make a STAAR testing complaint against Plaintiff. Nava explained that she had been notified that Plaintiff stated he had an emergency during testing, but that it was later resolved, and she wondered how he had learned of the emergency, suspecting he may have used a cell phone during testing, which was prohibited.

She interviewed two students after testing was complete to determine whether a cell phone had been used during testing, and one student stated that he heard the phone ringing and that Plaintiff had it behind the TV. Nava notified the JISD Testing Director but was informed that it was not a testing discrepancy, and the District would just need to re-train staff on active monitoring during testing. Nava stated that she did not investigate further or take disciplinary action. Def. Ex. B, B-4. Nava also denied the request for T-TESS re-appraisal with regard to Domains 1, II, and III because Plaintiff did not request another appraisal within the timeline outlined in Board Policy, but she granted it regarding Domain IV. Ex. B-4.

Because Plaintiff's Title VII claims were exhausted in May 2017, Plaintiff filed an amended complaint asserting both Equal Pay Act and Title VII claims in June 2017.

A Level II grievance decision was communicated to Plaintiff by Monica Rodriguez, Director of Employee Relations, on August 14, 2017. Def. Ex. B-5. With regard to Plaintiff's assertion that Nava was retaliating against him, JISD denied any retaliation and determined that Plaintiff was not selected for the ESY position due to a miscommunication between the Special Education Department and the JCARE campus regarding the application process, which was new to most users. Rodriguez stated that Nava was not part of the approval path. With regard to the T-TESS appraisal, Rodriguez noted that Plaintiff had failed to provide information as to which specific areas of the appraisal Plaintiff believed should be changed, and again concluded that his request for reappraisal regarding Domains I, II, and III should be denied as untimely. With regard to his salary, Plaintiff was informed that the issue was investigated, that Plaintiff's salary correctly reflected his years of experience, and the evidence did not show that female employees with less experience were being paid more. The letter

further informed Plaintiff that Nava had taken a new position and would no longer be the J-CARE principal. Rodriguez also informed Plaintiff that she had investigated the issue of whether Plaintiff was on his cell phone during STAAR testing and "affirm[ed] Ms. Nava's conclusion that the video does not show you on your cell phone." Def. Ex. B-5.

In December 2017, the Court appointed counsel for Plaintiff.[6] On February 23, 2018, Plaintiff filed a Third Amended Complaint clarifying the existing Title VII and Equal Pay Act claims.[7] The Equal Pay Act claim alleges that Judson has discriminated against Crain by paying him less than female staff, and includes a retaliation claim. The Title VII claim asserts discrimination on the basis of race and sex, and includes a retaliation claim.

Plaintiff was offered and accepted a teaching contract for the 2018-2019 school year and has not been transferred from the JAC program. Def. Ex. B. However, Plaintiff now claims he was "blocked" from applying for the 2018 ESY program. This allegation is not contained in his Complaint, however, and is thus not properly before the Court.

Defendant moves for summary judgment on all of Plaintiff's claims, and Plaintiff moves for summary judgment on Defendant's counterclaim. Plaintiff has also filed a motion to strike and both sides move to strike numerous exhibits submitted on summary judgment. All motions to strike are denied unless specifically noted otherwise.

---

[6] The Court thanks appointed counsel for accepting the appointment and for their diligent work on this matter.

[7] The Third Amended Complaint also sought to add a proposed § 1983 claim alleging that Judson ISD violated Crain's "constitutional rights," specifically by instituting a pretextual policy change forcing a conflict in scheduling in August 2014 and by requiring him to accept a lower hourly rate than that paid to female teaching staff for work after September 2014. JISD opposed amendment to allow the new § 1983 claim, and the Court denied leave to add the claim. *See* docket no. 90.

**Standard**

Summary judgment is proper when the evidence shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The Court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 853, 860 (5th Cir. 2004). The court "may not make credibility determinations or weigh evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 (2000); *Anderson*, 477 U.S. at 254-55.

**Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment on all of Plaintiff's claims. Plaintiff brings the following claims: (1) employment discrimination on the basis of race (African American)

and sex (male) in violation of Title VII; (2) retaliation for engaging in protected activity in violation of Title VII; (3) unequal pay in violation of the Equal Pay Act ("EPA"); and (4) retaliation for engaging in protected activity in violation of the EPA.

## A. Claims accruing prior to August 11, 2014

JISD argues that any claims accruing prior to August 11, 2014 must be dismissed because they are subject to the settlement agreement. Plaintiff denies making any such claims, noting that he denied making such claims at his deposition and that his appointed counsel clarified in the Third Amended Complaint that no such claims are asserted. This issue is discussed below, in the analysis of Plaintiff's motion for summary judgment on Defendant's counterclaim for breach of contract.

## B. Equal Pay Act claims (Count One)

The EPA requires that an employer not discriminate "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). Such other factors may include experience, prior salary, education, and skills the employer deems useful to the position. *Mullenix v. Forsyth Dental Infirmary for Children*, 965 F. Supp. 120, 140 (D. Mass. 1996); *see also Browning v. Southwest Research Inst.*, 288 F. App'x 170, 174 (5th Cir. 2008) ("Factors other than sex include, among other things, employees' '[d]ifferent job levels, different skill levels, previous training, and experience.'"). When factors such as seniority, education, or experience

are used to determine the rate of pay, then those standards must be applied on a sex-neutral basis. 29 C.F.R. § 1620.13(c). Once a plaintiff makes his *prima facie* case by showing that an employer compensates employees differently for equal work, the burden shifts to the defendant to show by a preponderance of the evidence that the differential in pay was made pursuant to one of the four enumerated exceptions. *King v. Univ. Health Care Sys.*, 645 F.3d 713, 723 (5th Cir. 2011).

Plaintiff alleges that, after September 2014, he was paid a salary that is less than that of female teaching staff with fewer years of teaching experience and he was required to accept an hourly rate ($9) that is less than that paid to female teaching staff ($20) at the ACE/Adventure Club. Compl. ¶¶ 20, 30.

### *salary discrimination*

Plaintiff contends that, after September 2014, he was paid a lower salary than that of female teaching staff with fewer years of experience. Third Am. Compl. ¶ 30. Plaintiff alleges that he received lower pay than Theresa Beitel, a middle school special education teacher with fewer years of experience. Plaintiff alleges that the jobs require equal work, effort, and responsibility, and are performed under similar working conditions. He contends that, if anything, his work with high school special education students requires a higher degree of skill, effort, and responsibility than a teacher in a middle school population. Third Am. Compl. ¶ 21. He further alleges that JISD administrators "have admitted to salary inequities for reasons other than a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any other factor other than sex." *Id.* Specifically, Plaintiff asserts that JISD Assistant Superintendent Elida Bera admitted during

her deposition that salary disparities and favoritism do occur in JISD. Docket no. 102 at 10 (citing Bera depo. at 52-53). However, she did not testify that any salary disparities were based on sex.

JISD moves for summary judgment on this claim on the basis that any salary disparities are based on factors unrelated to sex. JISD asserts that teachers are paid based on total years of creditable teaching experience, and the determination of years of creditable experience and placement on the salary schedule is done by the District's Human Resources Department. Docket no. 99 at 8. JISD states that years of creditable experience is based on state law (Tex. Educ. Code § 21.402) and the Texas Commissioner of Education's rules found at 19 Tex. Admin. Code § 153.1021. Def. Ex. B, B-6. New teachers are placed on pay step 0 and advance a pay step with each additional year of creditable experience. Def. Ex. B, B-6. JISD publishes its Compensation Plan each year, including a chart providing teacher salary based on total years of creditable experience. Def. Ex. B, B-6.

Defendant asserts that in the 2016-2017 school year, Plaintiff had 16 total years of creditable experience (11 years of which was with JISD, beginning with the 2005-2006 school year), and thus was placed at step 16, with a base salary of $53,450.00, the salary set forth in JISD's salary plan for teachers at step 16 for 2016-2017. Ex. B, B-6 at 10, B-8. His pay stub indicates he also received $2,000 in "extra duty pay" for class "STC1." Def. Ex. B-8. Defendant asserts that Plaintiff received this $2,000 stipend for teaching special education/BAC, in accordance with JISD's stipend schedule in the Compensation Plan. Def. Ex. B, B-6 at 24 (showing $2,000 stipend for "BAC/Life Skills")..

Defendant asserts that Theresa Beitel was also a special education teacher for JISD in the 2016-2017 school year, and she had five years of creditable experience (5 years total and 5 years with JISD), placing her on step 5 with a base salary of $50,750.00. Def. Ex. B, B-6 at 10, B-9. Beitel's pay stub also shows an additional $5,000 in "extra duty pay." Def. Ex. B-9. This is divided into three sources. Defendant states that the $2,000 stipend in class STC1 is the same stipend for teaching special education/BAC that Plaintiff receives. Def. Ex. B. Defendant states that she receives an additional $1,500 stipend for holding a master's degree and an additional $1,500 stipend for serving as special education department chair on her middle school campus, in accordance with the Compensation Plan stipend schedule. Def. Ex. B, B-9, B-6 at 23, 24 (showing $1,500 stipend for Department Chair Special Ed Middle School and $1,500 stipend for master's degree).[8] Thus, although Beitel was paid more than Crain in the 2016-2017 school year, the difference was not based on sex, but on neutral factors applied on a sex neutral basis.

Plaintiff also asserts that James Combs (white male, special education elementary school) is receiving a base salary of $56,550 with 20 years of service, but Combs was Plaintiff's aide for many years and only received his teaching certification within the last five years. Plaintiff therefore believes that he is not compensated appropriately based on his years of service, since

---

[8] JISD provides similar information for the 2014-2015 and 2015-2016 school years. For 2014-2015, Plaintiff was at Step 14, with a base salary of $51,250 and no extra duty pay. Def. Ex. B, B-12, B-15 at 14. Beitel was at step 3, with a base salary of $48,650, and no extra duty pay. Def. Ex. B, B-13, B-15 at 14.

For 2015-2016, Plaintiff was at Step 15, with a base salary of $53,450 and a $2000 "extra duty pay" for the special education stipend. Ex. B, B-10, B-14 at 10. Beitel was at Step 4, with a base salary of $50,750 and three additional stipends totaling $5000 (the same three as in the 2016-2017 school year). Def. Ex. B-, B-11, B-14 at 10.

he was being paid less than Combs. Plaintiff believes he is not being given credit for the 2003-2004 and 2004-2005 terms when he served JISD as a substitute teacher.[9]

Because Combs is also a male, he is not an appropriate comparator for Plaintiff's EPA claim, which only prohibits disparate pay on the basis of sex. If Plaintiff is relying on Combs for a Title VII wage discrimination claim, JISD points out that Plaintiff did not assert unequal salary or improper salary credits in his EEOC complaint (only disparities in Adventure Club pay), so any such claim is not exhausted for purposes of Title VII.

However, rather than relying upon Combs as a comparator for a disparate wage claim, Plaintiff appears to rely on Combs to assert that he is not being appropriately credited for his years of service for his years as a substitute teacher. But Plaintiff does not show that Combs or any other teacher, male or female, is being given credit for years as a substitute teacher while he is not. Plaintiff also provides no evidence showing that JISD is required to give him credit for years as a substitute teacher. In contrast, JISD asserts that credit is given for substitute service only if the educator held a valid Texas teaching certificate at the time, and Plaintiff did not receive his certificate until August 2005, after his two years of teaching as a substitute teacher. Docket no. 106 at 8-9 (citing TEX. ADMIN. CODE § 153.1021(k)); Pl. Ex. A-2. Plaintiff has not contradicted this evidence.

JISD has submitted undisputed summary-judgment evidence that Plaintiff is being appropriately credited for his years of service. Even if Plaintiff is not being paid correctly because he is not being credited for years as a substitute teacher, however, that is not alone a

---

[9] Plaintiff's Complaint alleges that the EPA pay disparity "amongst JISD Special Education Teachers . . . appears to have existed since at least 2010." Third Am. Compl. ¶ 20. He asserts in his Reply that he has asked for pay information for Combs and Beitel from 2010 but has not received it. The Court assumes that Plaintiff seeks this information merely to bolster his claim, since 2010 is well outside the statute of limitations for EPA claims, and Plaintiff's Complaint clearly asserts that his EPA claims are based solely on his salary after September 2014. Third Am. Compl. ¶30.

violation of Title VII or the EPA. Plaintiff has not shown that his creditable years of service or salary were changed in any way in retaliation for his grievance or were otherwise discriminatory or retaliatory in violation of federal law.

JISD has provided undisputed evidence that Plaintiff and the alleged comparator Beitel are being properly paid based on the Compensation Plan and state law, and Plaintiff fails to raise a genuine issue of material fact as to whether any differences in pay are in fact based on gender or are a pretext for discrimination. Plaintiff's reliance on Bera's deposition testimony is insufficient to raise a material fact issue, because she testified only generally that she has "seen favoritism" or "arbitrary decision-making" in terms of "paying one group of people a higher wage than another." Bera depo. at 26. When asked specifically for an example, she proffered "a situation a few years ago when one of our board members was trying to make the associate superintendent position be paid the same or more than the chief financial officer because that person felt that curriculum should be driving the district and not the finance part." *Id.* This testimony does not support an inference of gender or sex-based wage discrimination.

Defendant's motion for summary judgment is granted on Plaintiff's EPA claim and any Title VII claim he may be asserting related to his salary.

*Adventure Club hourly pay discrimination*

JISD moves for summary judgment on Plaintiff's claim on the basis that Plaintiff cannot demonstrate that a female comparator working in a position requiring equal skill, effort, and responsibility under similar working conditions was paid more than he was. The inquiry whether employees perform "equal work on jobs the performance of which requires equal skill, effort, and responsibility," looks to the "actual job requirements and performance," not

the employees' qualifications or job titles. *King*, 645 F.3d at 724; 29 C.F.R. § 1620.13(e). The equal work standard does not require that compared jobs be identical, only that they be substantially equal. 29 C.F.R. § 1620.13(a).

Plaintiff contends that Michelle Hogan, a white female teacher who had job responsibilities and duties that were substantially similar to his, remained at the $20 rate of pay after September 2014. Third Am. Compl. ¶ 16. Hogan taught classes at the Adult & Community Education Center ("ACE"). Plaintiff notes that ACE and Adventure Club are part of the same program, and the Adventure Club staff report to the same supervisory personnel (Joe Gonzalez and Diana Hanz) as the ACE staff. Thus, Plaintiff argues that he performed the same work (teaching and tutoring) under the same supervision as a female teacher paid $20 per hour for supplemental teaching outside primary work hours.[10]

JISD contends that summary judgment is appropriate because the identified comparator, Michelle Hogan, did not perform work requiring equal skill, effort, and responsibility under the same conditions. JISD admits that Hogan received a $20 pay rate, but argues that she was not similarly situated because she was a teacher at the ACE program (Adult & Community Education Program) and taught self-designed courses to adults, including Computer Applications and Computer Basics. Compensation for such courses is set as a percentage of the money paid for such courses based on the going rate for the type of class as opposed to the set hourly pay for aides in the Adventure club. Def. Ex. A, A-14.

---

[10] JISD asserts that Plaintiff's claim based on Adventure Club pay is nonsensical, as Plaintiff was no longer able to work at Adventure club after August 2014 due to the change in hours. However, Plaintiff was apparently offered, as part of the grievance resolution process, a position at the $9 rate at another campus that he declined, and Plaintiff asserts that, had he been able to work his prior Adventure Club job after August 2014, he should have been paid at the $20 rate. The Court presumes without deciding that this could state a claim under the EPA if an appropriate comparator were identified.

Plaintiff states that his duties included "teaching and tutoring students (including subjects such as computer skills), which required me to utilize my professional teaching skills and background" and that "JISD relied on me to use my 'expertise' to improve the program and the services it offered to students." Pl. Ex. A.[11] JISD contends that Plaintiff's own evidence shows that he was an aide who provided student supervision, homework tutoring help, "attendance/snack/booking keeping [sic]/Parent Identification" and "teaching crafts," with the bulk of his time spent tutoring students. Pl. Ex. A-4. Plaintiff notes an email from the ACE Coordinator welcoming him to the program in 2008 stating "Rosie is expecting you. They can really use your expertise. If you know a better way to do things or have ideas, feel free to suggest them. They are overwhelmed with kiddos!" Pl. Ex. A-6. While the Court agrees that Plaintiff's primary job duties at Adventure Club appear to be tutoring and he was viewed as having "expertise" in supervising children, Plaintiff fails to establish that his job at Adventure Club required the same skill, effort, and responsibility under similar working conditions as the job designing and teaching a class for adults held by Hogan.

It appears that Plaintiff's job as an aide did not require him to possess professional teaching skills and that other aides and supervisors at Adventure Club were not professional teachers. Adventure Club employees were subject to a different employee manual than ACE teachers. As noted by JISD, Plaintiff's own summary-judgment evidence demonstrates that Adult & Community Education and Adventure club were separate departments and that Adult & Community Education employees such as Hogan were paid different rates than the

---

[11] JISD objects to Plaintiff's "mischaracterization of his duties at the after-school care program" and his "mischaracterization of an email welcoming him to the Club to assert that JISD relied on his expertise to improve the Club. JISD moves to strike these portions of Crain's affidavit; that motion is denied. However, the motion to strike handwritten comments is granted.

Adventure Club employees.[12] The Court finds that Plaintiff's work at Adventure Club, an after-school program for students, is not a position requiring equal skill, effort, and responsibility under similar working conditions as Hogan's teaching a self-designed course in Computer Applications and Computer Basics to adults.[13]

Thus, summary judgment is granted for JISD on Plaintiff's EPA claim related to his Adventure Club pay.

### C. Title VII Race and Sex Discrimination Claims (Count Three)

Plaintiff alleges that JISD violated Title VII by discriminating against him on the basis of his race and his sex. Plaintiff alleges that in August 2014 he was subject to an adverse employment action when JISD changed his primary work hours and the Adventure Club check-in and work hours to create a conflict that forced him to terminate his Adventure Club employment. Plaintiff alleges that white and other female staff were permitted to work hours that were denied to him. Plaintiff further alleges that he was discriminated against when JISD required him to accept an hourly rate of $9, less than that paid to female teaching staff at Adventure Club, for work after September 2014. Plaintiff alleges that white and other female staff members were paid $20 per hour. In Paragraph 28 of the Third Amended Complaint, Plaintiff also alleges that JISD retaliated against him "by creating and permitting a harassing work environment in retaliation for Plaintiff CRAIN's opposition to unlawful employment practices and participation in grievance proceedings." Compl. ¶ 28.

---

[12] Plaintiff's evidence indicates that Randolph Meade was paid approximately $18 per hour and Kevin Kelly was paid $27.84 per hour for teaching at ACE, which is even more than the $20 per hour paid to Hogan. Pl. Ex. A-26.

[13] JISD also provides briefing with regard to Norma Rivas, who received higher pay for working at Adventure Club. However, Plaintiff has clarified that he is not asserting an EPA claim with regard to Rivas, but uses her pay after August 2014 compared to his pay offer to support his retaliation claim.

1. <u>failure to exhaust</u>

JISD asserts that Plaintiff has failed to exhaust administrative remedies as to any hostile work environment claim because there are no such allegations in his EEOC charge or amended EEOC charge. Specifically, Plaintiff alleges in ¶ 28 that JISD retaliated against him by creating and permitting a harassing work environment in retaliation for his participation in the grievance proceedings. He alleges specifically in ¶ 28 of the Complaint that he was subjected to increased scrutiny and evaluations in August 2016, was subjected to false allegations of testing violations in April and May 2017, and was subjected to attempted reassignment to a less desirable campus (Wagner HS) in August 2017 by Nava and Monica Rodriguez.[14] Third Am. Compl. ¶ 28. While Defendant characterizes these allegations as a stand-alone hostile work environment claim, Plaintiff notes that he does not rely on these events to establish a stand-alone discrimination claim, but as "part of his retaliation claims." Docket no. 102 at 30 n.5. Accordingly, the Court will analyze these allegations as part of Plaintiff's retaliation claims rather than as a stand-alone hostile work environment claim.

Thus, for purposes of Plaintiff's Title VII discrimination claim, the only claim is that Plaintiff was subject to discrimination based on race and sex when they changed his hours in August 2014 but permitted females to work hours denied him and when they set his pay rate for Adventure Club at $9 per hour but paid white, female staff $20 per hour. It is undisputed that Plaintiff has exhausted these claims.

---

[14] Crain alleges that JISD has refused to comply with its obligations under the Texas Public Information Act to release evidence related to the foregoing incidents of harassment. Compl. ¶ 28. JISD asserts that this allegation has been fully briefed and ruled on in relation to the motions to compel discovery. Docket no. 54, 59, & 63.

2. failure to establish *prima facie* case

Plaintiff asserts Title VII discrimination based on race and sex insofar as his work hours and the Adventure Club check-in hours were changed in August 2014, forcing him to terminate his Adventure Club employment, while "white and other female staff was permitted to work hours . . . that were denied to [him]." Third Am. Compl. ¶ 33. Plaintiff further asserts Title VII wage discrimination based on sex when JISD required him to accept an hourly rate at Adventure Club that was less than that paid to female teaching staff ($9 compared to $20 per hour). *Id.* ¶ 34.

*wage discrimination*

Title VII makes it unlawful "to discriminate against any individual with respect to his compensation . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The *McDonnell Douglas* framework applies to Title VII pay discrimination cases when there is no direct evidence of discrimination. *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 184 (5th Cir. 2018). One of the requirements for such a claim is that the plaintiff must show that he was paid less than a proffered comparator, not in his protected class, for work requiring substantially the same responsibility. *Id.* The proffered comparator must be similarly situated to the plaintiff, and a variety of factors are considered to determine whether a comparator is similarly situated, including job responsibility, experience, and qualifications. *Id.* JISD argues that Plaintiff cannot establish his prima facie case because he cannot show that other similarly situated employees were treated more favorably.

Plaintiff asserts that Michelle Hogan, a white female teacher, was paid $20 per hour for the same type of work, under the same supervision. This assertion also forms the basis of Plaintiff's EPA claim, discussed above, but a plaintiff may assert wage discrimination claims under both the EPA and Title VII. For the same reasons discussed above with regard to Plaintiff's EPA claim, the Court finds that Michelle Hogan was not similarly situated to Plaintiff, and thus his disparate treatment Title VII wage discrimination claim fails.

Plaintiff further asserted a wage discrimination claim in his EEOC charge based on the fact that a white female was continuing to receive $20 per hour pay, whereas he had been reduced to $9 per hour. JISD contends that this person is Christine Hazelton, a white female, who was paid slightly more than $20 per hour for her time at Adventure Club prior to the schedule standardization. Def. Ex. A. JISD contends that Hazelton is not similarly situated because her primary job was Head Custodian, and as such she was a non-exempt full-time employee who was eligible for overtime pay, while Plaintiff, as a teacher, was an exempt employee. Def. Ex. A. JISD asserts that teachers like Plaintiff received either $12 (supervisors) or $9 (aides) for working at Adventure Club. Def. Ex. A. JISD further notes that Hazelton was unable to continue to work at the Adventure Club as a result of the work hour standardization implemented at the start of the 2014-2015 school year, and thus she did not continue receiving this pay after August 2014. Def. Ex. A, A-10. Plaintiff has not disputed any of this evidence.

The Court finds that Plaintiff has failed to state a *prima facie* case of wage discrimination under Title VII based on his Adventure Club pay.

*changes in Adventure Club and JAC hours*

With regard to his ability to continue working at Adventure Club after August 2014, Plaintiff asserts a Title VII sex discrimination claim based on disparate treatment in work hours. In his EEOC charge, he asserted that JISD purposefully changed his schedule to keep him from going to Adventure Club and noted that "a female was allowed to arrive to the Adventure Club at 4 pm whereas I was not allowed."

JISD asserts that the female in question was Ana K. Gonzalez, who was temporarily allowed to report for duty in the Fall of 2014 at her Adventure Club assignment at 3:30 p.m. on Wednesdays, because JISD believed this to be a required accommodation under the FMLA so she could drive her father to a standing medical appointment. Def. Ex. A, A-12. Thus, JISD asserts that Gonzalez was not similarly situated, and when she later requested in January 2015 to start coming in on Mondays at 4 pm in order to attend a college class, that request was denied, and Gonzalez resigned from Adventure Club as a result. Def. Ex. A, A-13. JISD asserts that there were more than twenty other Adventure Club employees besides Plaintiff who were no longer able to work for Adventure Club due to the setting of standing work hours that conflicted with their full-time job schedule for JISD.

In his summary judgment response, Plaintiff asserts that JISD teacher Gale Edwards, a black female, was permitted to work from 4 to 6 pm at the Adventure Club in the Fall of 2014. Docket no. 102 at 7, 24. Plaintiff provides Edwards' time sheet for August 15, 2014 to September 14, 2014 showing her hours at the Salinas campus Adventure Club (a different campus than the one at which Plaintiff worked). Pl. Ex. A-22. It shows that she checked in after 2:30 pm on all six occasions that she worked during the first month-long pay period (at

3:30 on August 26, 3:15 on August 28, and at 4 pm on September 2, 4, 9, and 11). *Id.* The time sheet is signed by a supervisor and by Gloria Triana, the Adventure Club Liaison. Plaintiff alleges that he and Edwards were similarly situated because they both reported to the same ultimate supervisor (Triana) and both taught computer and technology subjects.

JISD responds that while Edwards was permitted to check in after 2:30 for the first pay period, Plaintiff fails to provide evidence showing that Edwards continued to check in beyond the required time after the first pay period and that the situation was thereafter investigated and resolved. Specifically, JISD asserts that Superintendent Dr. Mackey investigated Plaintiff's complaints that the hours policy was not being equally enforced and, after finding some deficiencies in adherence, terminated Gloria Triana and issued a letter of counsel to Coordinator Diana Hanz directing her to enforce the hours policy. Docket no. 106 at 6 (citing MSJ docket no. 99 at 7 ¶ 15, Def. Ex. A, A-15).

Thus, while Plaintiff does identify a female teacher at a different campus who was permitted to check in after 2:30 for the first pay period, JISD has submitted undisputed summary judgment evidence that this disparity was resolved and steps were taken to ensure that the policy was adhered to across all Adventure Club campuses after that. The Court thus finds that Plaintiff has failed to establish a *prima facie* case of disparate treatment discrimination with regard to his hours, and summary judgment on this claim is appropriate.

3. legitimate, nondiscriminatory reasons

JISD argues that it had legitimate, nondiscriminatory reasons for its actions. JISD asserts that it implemented standardized staff hours for all its Adventure Club sites, and that when Superintendent Mackey, an African-American male, determined in responding to one of

Plaintiff's grievances that sign-in times were not being adhered to, he terminated the Adventure Club liaison and issued a letter of counsel to the Coordinator. Def. Ex. A, A-15. JISD further notes that twenty-two Adventure Club employees resigned due to the work hours change in August 2014. Def. Ex. A, A-10.

Plaintiff contends that JISD's explanation is insufficient to support summary judgment because there were in fact two different policy changes, and Plaintiff was the only certified teacher affected by both. JISD has submitted a legitimate, nondiscriminatory reason for implementing the hours policy at the Adventure club sites, and has submitted undisputed evidence that after the first pay period, these hours requirements were applied equally to all, forcing at least twenty-two individuals to cease working at Adventure Club. JISD has also submitted a legitimate, nondiscriminatory reason for its change to Plaintiff's work hours at JAC. Plaintiff has not shown that any other similarly situated JAC teacher was subjected to preferential treatment. Accordingly, Plaintiff fails to establish pretext, and summary judgment is appropriate on Plaintiff's Title VII claim related to his work at Adventure Club after September 2014.

### D. Title VII and Equal Pay Act Retaliation Claims (Counts Two and Four)

Both Title VII and the EPA prohibit employers from retaliating against employees who engage in activity protected under the respective acts. *Browning v. Sw. Research Inst.*, 288 F. App'x 170, 178 (5th Cir. 2008) (citing 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 215(a)(3)). Plaintiff asserts a number of retaliation claims under Title VII and the EPA, including a claim related to the change in hours in August 2014 so that he could no longer work at Adventure

Club, denial of employment in ESY in 2017, hostile work environmental retaliation, and being blocked from working at the evening high school after the Fall of 2014..

*Title VII exhaustion*

JISD argues that Plaintiff's "hostile work environment" claim (allegations set forth in ¶ 28) and his claim that he was not hired in May 2017 for the ESY position are not exhausted. It is not entirely clear whether Plaintiff asserts his ESY claim under the EPA or Title VII. Count Two asserts a specific claim for EPA retaliation limited to the denial of ESY employment in 2017. Count Four then asserts a claim for "Title VII and Equal Pay Act Retaliation" and focuses on his inability to continue working at the Adventure Club. Because Plaintiff brings the ESY claim specifically in Count Two under the EPA and does not mention it in Court Four, it appears he is not bringing that claim under Title VII. The Court will limit its consideration of this claim to the EPA, which does not require exhaustion of remedies. *Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 119 (5th Cir. 2005) (citing *Cty. of Wash. v. Gunther*, 452 U.S. 161, 175 n.14 (1981)); *Trevino-Garcia v. Univ. of Tex. Health Sci. Ctr*, No. SA-09-CA-572-XR, 2009 WL 3464865, at *3 (W.D. Tex. Oct. 19, 2009).

As to the Title VII hostile work environment retaliation claim, Plaintiff filed identical EEOC complaints in January and November 2015, checking the box for retaliation. He specifically alleged retaliation based on the change in his hours and his Adventure Club pay. None of the alleged events of retaliation set forth in ¶ 28 of the Complaint had yet occurred when he filed the EEOC complaints. Plaintiff contends that they occurred in August 2016 (increased scrutiny and evaluations, denied access to facilities), March 2017 (T-TESS evaluations), "April and May 2017" (allegations concerning STAAR testing violations and

investigations of such allegations in a manner that violated District policy), and August 2017 (attempt to reassign Plaintiff to a less desirable campus). The EEOC investigated and issued a right to sue notice on May 5, 2017.

JISD contends that Plaintiff has failed to exhaust administrative remedies as to these claims because they were not brought in an EEOC charge. An employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination or that could not reasonably be expected to grow out of the charge. *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012). The Court construes an EEOC complaint broadly, in terms of the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

Ordinarily a stand-alone hostile work environment claim must be sufficiently presented in the EEOC charge and cannot be expected to grow out of a discrimination claim without additional allegations related to hostile work environment. However, in this case, as discussed above, Plaintiff checked the box for retaliation on the 2015 EEOC charge and asserted specific acts of retaliation, and he alleges that the complained-of actions in 2016 and 2017 were continuing acts of "hostile work environment retaliation." In addition, he remained employed by JISD, and thus the scope of the EEOC investigation could reasonably be expected to include additional allegedly retaliatory acts by JISD occurring during the scope of the EEOC investigation, which ended May 5, 2017. This would encompass several of the allegations of retaliation.

In addition, Plaintiff invokes the *Gupta* exception to exhaustion for alleged retaliatory acts. "The *Gupta* exception allows a plaintiff to proceed in district court on an unexhausted

retaliation claim if that claim is alleging retaliation for properly bringing an exhausted claim before the district court." *Sapp v. Potter*, 413 F. App'x 750, 752 (5th Cir. 2011). *Gupta* applies here.[15]

*Gupta* held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge" and was decided in 1981. *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981). Although in 2013 the Fifth Circuit noted in a footnote in an unpublished opinion that *Gupta* "may no longer be applicable" after the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), *see Simmons-Myers v. Caesars Ent. Corp.*, 515 F. App'x 269, 273 n.1 (5th Cir. 2013), district courts have held that *Gupta* is still the law in the Fifth Circuit unless and until the Fifth Circuit or Supreme Court reassesses its holding. *Powell v. Akin Gump Strauss Hauer Feld*, No. 3:17-CV-1726-K-BH, 2018 WL 2056196, at *5 (N.D. Tex. Apr. 18, 2018); *Fischer v. Donahoe*, No. 3:15-CV-0881-D, 2016 WL 1028127, at *3 & n.4 (N.D. Tex. Mar. 15, 2016); *Taylor v. Tex. S. Univ.*, No. 4:12-CV-01975, 2013 WL 5410073 (S.D. Tex. Sept. 25, 2013). Thus, the Court finds that Plaintiff's Title VII retaliation claims are not barred by failure to exhaust administrative remedies.

### *Count Two – EPA retaliation related to 2017 ESY*[16]

In Count Two, Plaintiff alleges that JISD retaliated against him in April and May 2017 when it denied him employment with the ESY program because he pursued a complaint and

---

[15] Although the Fifth Circuit has repeatedly stated that it has not applied the *Gupta* exception "to claims in which both retaliation and discrimination are alleged," *Simmons-Myers v. Caesars Entertainment Corp.*, 515 F. App'x 269, 273-74 (5th Cir. 2013), Plaintiff's hostile work environment retaliation claims and claims related to the evening high school are retaliation only, *see* Third Am. Compl. ¶ 14, not discrimination and retaliation claims, and thus the situation in which Plaintiff would be required to exhaust a discrimination claim but proceed on the retaliation claim would not exist.

[16] To the extent Plaintiff's Response alleges that he was also blocked from ESY in 2018, that claim is not asserted in the Complaint and is not properly before the Court.

grievance in April 2017 complaining of unequal pay. Plaintiff alleges that he met all necessary qualifications and in fact was the only JAC teacher who applied to serve JAC students in the 2017 ESY program. Third Am. Compl. ¶ 25. Plaintiff alleges that his application was timely filed, yet he was not hired, he was not given an explanation why he was denied the position, and JISD continued to seek female educators (and hired Tara Dalton) with similar qualifications. *Id.* ¶¶ 25-27. Plaintiff alleges that he was denied employment immediately after participating in protected activity of filing a grievance complaining of bias in teacher pay scales. *Id.* ¶ 27. JISD contends that Plaintiff was not selected for the position due to a miscommunication between the Special Education department and the JAC program regarding the online application process, which was new to most users. Def. Ex. B at 4.

*protected activity*

Defendant moves for summary judgment on the basis that Plaintiff cannot establish that he engaged in protected activity because his April 12, 2017 grievance does not sufficiently assert a violation of law. Plaintiff's Level One grievance complaint states, "I have also been in communication with JISD about salary inequities for 2016-7. I believe I am paid less than others who have less experience than me." Def. Ex. B-3. The requested remedy is, "My 2016-17 salary should be raised to reflect my years of experience." *Id.* Defendant contends that this grievance does not rise to level of protected activity because it does not concern a violation of law, since it does not allege disparate salaries based on sex or otherwise assert a violation of the EPA. Docket no. 99 at 16. JISD argues that this is the only activity that could form the basis of Plaintiff's retaliation complaint, because he asserts that he was denied the ESY

position on May 11, 2017, and thus any other activity could not form the basis of his retaliation claim. *Id.*

Both parties agree that an informal, internal complaint to an employer regarding a violation of the EPA may constitute protected activity under § 215(a)(3). *Hagan v. Echostar Satellite LLC*, 529 F.3d 617, 626 (5th Cir. 2008). However, the informal complaint must concern "some violation of law." *Id.* This means the assertions in the complaint must be framed in terms of potential illegality. *Id.*; *see also Love v. Re/Max of Am., Inc.*, 738 F.2d 383 (5th Cir. 1984) (district court found that employee had made a legitimate good faith assertion of a statutory right by sending a memo requesting a raise and attaching a copy of the EPA to the memo); *Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021, 1028-29 (8th Cir. 2002) (plaintiff failed to present sufficient evidence that she opposed an unlawful employment practice prior to her termination because while she complained that she was entitled to a pay increase and a change in job title, she did not attribute her employer's failure to give her a raise or a promotion to sex discrimination and thus she was not engaged in a protected activity for the purposes of Title VII wage discrimination claim and consequently did not establish a prima facie case of retaliation).

JISD contends that Plaintiff's grievance, which stated only that he believed he was paid less than others with less experience, did not allege a violation of law or assert potential illegality. Plaintiff contends that the grievance satisfies the standard for filing a complaint, and there was no reason to have filed a grievance other than to make an allegation of potential illegality. Docket no. 102 at 20. Plaintiff asserts that *Hagan* is factually inapposite.

The Court will deny summary judgment on this ground. Plaintiff's grievance was based on "ongoing salary issues" and "salary inequities" and Plaintiff noted that he was being retaliated against for advocating for "fair wages." At the time he filed the grievance, Plaintiff had brought this action asserting EPA violations. Although Plaintiff's grievance did not specify that he was being paid less than *female* teachers with less experience in violation of the EPA, it is clear from the Level 2 grievance response that JISD knew that Plaintiff was asserting disparate pay as to female teachers. In addition, although Count Two only specifically mentions the April 12, 2017 grievance as protected activity, Section F of the Complaint clearly alleges retaliation on both the filing of this lawsuit on August 22, 2016 and the April 12, 2017 grievance. Accordingly, Plaintiff has sufficiently demonstrated that he participated in protected activity for purposes of the EPA.

*causal connection*

JISD further contends that, even if Plaintiff can establish that he engaged in protected activity, he cannot establish the requisite causal connection because the relevant decisionmaker did not have knowledge of the protected activity. Plaintiff's Complaint alleges: (1) he filed this lawsuit on August 22, 2016; (2) he filed a grievance on April 12, 2017 complaining of unequal pay as compared to other female educators with less experience; (3) on or about April 21, 2017, he applied for a 2017 ESY position "through Sandra Guevara, Aida Nava, Elida Bera, and Monica Rodriguez, administrators for [JISD]"; (4) ESY "Coordinator Sandra Guevara and Human Resources Director Monica Rodriguez received Plaintiff's application, but refused to acknowledge the timely filed application"; (5) despite his timely application and without notice as to any deficiencies, JISD failed to hire Plaintiff for

the ESY program (his grievance states that he was notified on about May 11, 2017 that his application was denied); and (6) after rejecting his application, JISD continued to seek female educators with similar qualifications. Third Am. Compl. ¶¶ 23-27, 31.

JISD notes that Plaintiff asserted during the grievance process that Principal Nava (who knew of his grievance) denied his application, but the evidence shows that the hiring decisions were made by the Special Education Department (specifically Michelle Hilliard and Sandra Guevara[17]), which played no part in the grievance handled by the Human Resources Department, and that Nava played no part in the 2017 ESY selection decision. Docket no. 106 ¶ 20; Def. Ex. B at 4, B-4, B-5.[18]

To establish retaliation, Plaintiff must provide summary judgment evidence that the relevant decisionmaker(s) knew he had filed a complaint, or summary judgment is appropriate. *Kebiro v. Walmart*, 193 F. App'x 365, 368-69 (5th Cir. 2006). Plaintiff contends that his evidence shows that both the Special Education Department and the Human Resources Department were notified of Plaintiff's grievance concerning pay inequities and of his application for ESY employment. Docket no. 102 at 21-22. Specifically, Plaintiff notes that, after other employees were receiving notices of hiring decisions but he had not, he emailed numerous administrators, including Sandra Guevara (Special Education Coordinator), Aida Nava (JCARE Principal), Elida Bera (JISD Assistant Superintendent), and Monica Rodriguez (Director for Employee Relations, Department of Human Resources). Docket no. 102 at 22.

---

[17] JISD notes that Plaintiff's own evidence shows that Michelle Hilliard and Sandra Guevara in the Department of Special Education Services were the decisionmakers for the ESY hiring, citing Pl. Ex. A-24, Crain's agreement to work at ESY in 2016, which states that the form should be returned to Michelle Hilliard for Elementary Employment and Sandra Guevara for Middle and High School Employment.

[18] Defendant's motion states that Plaintiff did not apply for the 2018 ESY program. Docket no. 99 at 10-11 (citing Ex. B at 4). Plaintiff's Response asserts that he was "blocked from submitting an application for ESY for the Summer of 2018." Docket no. 102 at 18 n.1. As noted, however, any claim about the 2018 ESY program is not included in the Complaint and is not properly before this Court.

Plaintiff provides (1) an email he sent to Michelle Hilliard on April 28 stating that the ESY application "seemed to be blocked from his view," Pl. Ex. A-37; (2) an email from Sandra Guevara on May 4 thanking him for sending an attachment, directing him to reattach and resubmit in Eduphoria or scan directly to Michelle Hilliard, and stating that they had not yet made final decisions, but were still seeing how much staff would be needed, Pl. Ex. A-36; (3) an email he sent to Sandra Guevara and Elida Bera (and apparently forwarded to Michelle Hilliard and Monica Rodriguez) on May 11 stating that a JAC student had asked if he would be teaching because other staff were "sharing acceptance letters" but he had not received notice and stating, "Thinking back to last year, I hope that my inquiry to you and Ms Bera regarding last years delay in pay or things not related to my ESY performance are effecting my employment opportunities. When one is unsure, one reflects on the possibility that this past unpleasant experience has limited future opportunities." Pl. Ex. A-35; and (4) an email response from Monica Rodriguez on May 16 stating "I am not certain if you intended to include me in this email, however I do not oversee the special education department nor do I have oversight of the application process for ESY." Pl. Ex. A-36. Plaintiff asserts that he was notified on May 11 that he was denied the position.

Plaintiff's evidence is insufficient to demonstrate retaliatory animus and a causal connection because he fails to show that the relevant decisionmakers, Hilliard and Guevara, were aware of his protected activity. JISD has provided undisputed summary judgment evidence that the Special Education Department was not involved with Plaintiff's grievance. Although Plaintiff has shown that decisionmakers Hilliard and Guevara were aware that he was applying for the position, he offers no evidence to show that they were informed about his

protected EPA activity in order to form a retaliatory animus before the decision not to hire him was made. His email on May 11 to Guevara (and forwarded to Hilliard) referencing his "inquiry to [Guevara] and Ms Bera regarding last years delay in pay or things not related to my ESY performance" and "past unpleasant experience" are insufficient to notify them of protected EPA activity. Nor has Plaintiff provided evidence to show that any other person with knowledge and retaliatory animus influenced the decision pursuant to a cat's paw type of analysis. While the circumstances surrounding the failure to hire Plaintiff for the 2017 ESY are unfortunate, there is no basis for a jury to find that the failure to hire was the result of unlawful retaliation.

<u>*Count Four – Title VII and EPA retaliation*</u>

Plaintiff alleges that he engaged in protected activity when he filed and pursued a complaint and grievance against JISD complaining of discriminatory pay due to his race and sex, and that JISD retaliated against him in August 2014 when it changed his primary work hours and the Adventure Club work hours to create a conflict. Third Am. Compl. ¶ 35. Plaintiff alleges that JISD took this action in retaliation for his participation in and resolution of his grievance filed September 2013 and finally resolved by written settlement agreement on August 11, 2014.

Plaintiff further alleges that JISD retaliated against him by creating and permitting a harassing work environment in retaliation for his opposition to unlawful employment practices and participation in the grievance proceedings. *Id.* ¶ 28. Specifically, he complains about increased scrutiny and evaluations of himself and his staff and being denied access to certain facilities in August 2016, a March 2017 formal performance evaluation, allegations

concerning STAAR testing violations in April/May 2017, refusal to comply with Texas Public Information Act requests, and attempts by Nava and Monica Rodriguez to reassign him to a less desirable campus (Wagner HS) in August 2017. *Id.* ¶ 28. The Fifth Circuit has so far declined to decide whether "retaliatory hostile work environment" is a cognizable cause of action. *See McCorvey v. Univ. of Tex. Health Sci. Ctr.*, No. 5:16-CV-631-DAE, 2016 WL 8904949, at *10 (W.D. Tex. Dec. 21, 2016) (listing cases). Yet courts have nevertheless proceeded to assess such claims in particular cases, applying a hybrid standard from retaliation and hostile work environment claims, *see id.*, and the Court will do so in this case.

*Change in hours/Inability to continue working at Adventure Club in August 2014*

Plaintiff relies on the following facts to support this retaliation claim: (1) the timing of the adverse actions as immediately after resolution of his Adventure Club pay grievance; (2) the fact that he was the only teacher affected by both schedule changes and thus no longer able to work at Adventure Club; (3) inadequate notice was given to plaintiff, students/parents, and even Principal Mihleder of the JAC schedule changes; and (4) Gale Edwards was permitted to continue arriving after 2:30 p.m. at her Adventure Club location.[19] The Court has already discussed Gale Edwards, *supra*, and JISD has produced undisputed summary judgment evidence that Edwards was not permitted to check in late after the first pay period, and that JISD terminated Triana after investigating Plaintiff's complaint and learning that the hours policy was not being consistently applied.

---

[19] Plaintiff emphasizes the fact that he was initially given work hours of 7 am to 3:30 pm, but after responding to Principal Mihleder's inquiry about whether he intended to work at the ACE/AC and evening high school, his hours were then changed to 7:20 am to 3:50 pm. *See, e.g.*, docket no. 102 at 15. This change does not appear to have affected Plaintiff's ability to work at either the AC any more than the 7 to 3:30 schedule, however, as either schedule presumably precluded him from checking in to the AC by 2:30. It does not appear to have affected his ability to continue teaching at the evening high school, since the undisputed evidence shows that he taught there the Fall of 2014. Thus the Court does not find the second schedule change to be particularly relevant.

JISD argues that Plaintiff cannot establish causation to make out a prima facie case of retaliation because Plaintiff relies primarily on temporal proximity, but the evidence indicates that the discussion and decision to change the hours of operation for the Adventure Club programs was made in May 2014, even though the change was implemented in August 2014, and the change applied to all teachers, staff, and students, not just to Plaintiff. JISD argues that temporal proximity is not enough to establish causation where Plaintiff filed the grievance in September 2013 and JISD implemented a standard policy decided in May 2014 that took effect in August 2014 across approximately fifteen elementary schools.

JISD notes that Plaintiff has been filing grievances since at least 2008, and JISD has investigated and responded to them, sometimes awarding him relief, and has maintained his employment. JISD further notes that Plaintiff testified at his deposition that when he complained about no longer being able to work at Adventure Club due to the hours change but other employees could, after it was investigated, three or four months later, Dr. Mackey offered to let him work at an Adventure Club at a different campus to resolve the grievance. Crain depo. at 150-51.

Plaintiff contends that temporal proximity is sufficient to establish a *prima facie* case of causation in this case. Plaintiff notes that his grievance was finally resolved on August 11, 2014, and that same week, he was notified of the change to check-in requirements at the AC and the change to his hours at JAC. Plaintiff contends that even if JISD decided to change the JAC/JSAS primary hours in the summer of 2014, fact issues remain because parents, teachers, and even the Principal of JAC/JSAS were not informed of the change until August 2014. Moreover, Plaintiff contends that fact issues remain because JISD has failed to establish when

the decision to set a uniform schedule for ACE/AC and its specific hours was actually made. Thus, Plaintiff asserts, taking the facts in the light most favorable to him and considering the close proximity of the changes to Plaintiff's grievance directly related to his pay at Adventure Club, he has made a prima facie case of causation.

JISD argues that it had legitimate, nondiscriminatory reasons for its action – to create uniformity in hours across all Adventure Club sites and to correct problems with staffing and timekeeping. JISD notes that all Adventure Club employees were required to sign a form acknowledging the compensation rates and work schedule, that the requirements were set out in the Adventure Club Employee Policy Manual for the 2014-2015 school year, and that more than twenty other Adventure Club employees were no longer able to work for Adventure Club due to the setting of standard work hours because it conflicted with their full-time job schedule for JISD. JISD further established that the change to JAC hours was made to bring the JAC/JSAS campus in line with the middle school campus schedule.

Plaintiff, on the other hand, contends that the schedule changes were pretext for retaliation to prevent him from engaging in further supplementary JISD work. Docket no. 102 at 17. Plaintiff emphasizes that he was the only professional teacher affected by both policy changes, and the other identified individuals forced to resign from Adventure Club due to the work hours mandate were not certified teachers. Plaintiff relies on the close timing, the fact that he was the only teacher affected, and the fact that the hours mandate was not applied equitably (because Gale Edwards was permitted to work from 4 to 6 pm in the Fall 2014 term), to show that the hours changes were pretextual.

Even assuming that Plaintiff established a prima facie case of retaliation based on temporal proximity, JISD has established legitimate, nondiscriminatory reasons for the hours changes, and Plaintiff has failed to proffer sufficient evidence of pretext to survive summary judgment. JISD has shown that the hours were changed at JAC/JSAS for a legitimate, nondiscriminatory reason and affected all teachers at the campus. Similarly, JISD has shown that the hours policy was changed across all Adventure Club campuses and affected all staff employed there. Plaintiff does not dispute that at least twenty-two employees could no longer work at Adventure Club due to the hours policy change. It is not plausible to think that JISD would enact an hours policy in August 2014 that would affect so many employees, simply to retaliate against him for filing a grievance in September 2013.

The fact that Plaintiff was the only teacher among those no longer able to work at Adventure Club proves nothing other than that he was the only teacher who worked at both the Adventure Club and JAC. Like the Adventure Club hours policy change, the JAC/JSAS hours change also affected many employees – all of the staff at the JAC/JSAS campus – not just Plaintiff. Plaintiff provides no evidence showing that the change in his JAC hours was specifically targeted to affect his ability to work at Adventure Club. Although he asserts that Principal Mihleder asked him if he intended to continue working at Adventure Club and then changed his hours a second time (from 7:00 to 3:30 to 7:20 to 3:50) after he indicated that he did, that second change had no additional effect on his ability to work at Adventure Club – neither schedule would permit him to work at the Adventure Club. Plaintiff's evidence is insufficient to demonstrate pretext.

The Court finds that summary judgment is appropriate on this claim.

*Hostile Work Environment Retaliation*

To establish either a Title VII or an EPA retaliation claim, a plaintiff must establish, among other things, that he suffered an adverse action. *Alkhawaldeh v. Dow Chemical Co.*, 851 F.3d 422, 427 (5th Cir. 2017); *Browning v. Sw. Research Inst.*, 288 F. App'x 170, 178 (5th Cir. 2008). The definition of an adverse employment action is broader in the retaliation context than in an ordinary discrimination claim, and requires an adverse action that is "materially adverse" to a reasonable employee, which means that the employer's action is "harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 804 (5th Cir. 2018) (citing *Burlington N. & Santa Fe Ry.*, 548 U.S. 53, 68 (2006)). However, the significance of any given act of retaliation will often depend upon the particular circumstances; context matters. *Id.*

JISD moves for summary judgment on this claim on the basis that none of the alleged retaliation was sufficiently materially adverse. With regard to the T-TESS evaluation, JISD argues that low performance evaluations are not adverse employment actions, even in the retaliation context. The Fifth Circuit has held that a Plaintiff must establish that a less-than-optimal performance review would have a negative effect on the plaintiff's position or salary or would otherwise be attached to financial harms, and, if not, the Plaintiff must show that in context it would otherwise discourage the plaintiff from asserting a charge of discrimination. *Thibodeaux-Woody v. Houston Comm. Coll.*, 593 F. App'x 280, 286 (5th Cir. 2014). Plaintiff has not done so.

As to increased scrutiny/evaluations and denial of facilities access, Plaintiff has offered no evidence that he was subjected to extra, oppressive scrutiny or denied access, and conclusory allegations that are unsubstantiated are inadequate to satisfy his summary judgment burden. *Browning*, 288 F. App'x at *180. Further, alleged retaliatory micro-managing of an employee's performance or an allegation that an employee was watched more closely than other employees have been held insufficient to establish an adverse action. *Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007); *Grice v. FMC Techs., Inc.*, 216 F. App'x 401, 404, 407 (5th Cir. 2007). Actions such as evaluations, investigations, and reprimands, without evidence of consequences, generally are not adverse employment actions. *Thibodeaux-Woody*, 593 F. App'x at 286. It is undisputed that Plaintiff suffered no consequences from the STAAR testing allegations. With regard to the attempted reassignment, Plaintiff was not actually reassigned, and there is no evidence that the attempted reassignment would have amounted to a demotion, would have been a significant problem for Plaintiff, or would dissuade a reasonable person in Plaintiff's shoes from filing an EEOC charge. *See Stringer*, 727 F. App'x at 804. Even viewing all of the alleged hostile work environment retaliation actions together under a totality of circumstances, Plaintiff fails to establish that the actions were sufficiently severe or pervasive as to affect a term, condition, or privilege of employment.

Summary judgment is granted on Plaintiff's hostile work environment retaliation claim.

*Evening High School retaliation*

Plaintiff also alleges that he was blocked from teaching at the evening high school after the Fall of 2014 as retaliation. Third Am. Compl. ¶ 14; docket no. 102 ¶21. It is undisputed that

Plaintiff was able to continue working at the evening high school in the Fall of 2014, despite both changes to his JAC schedule.

In its motion for summary judgment, JISD noted that the evening high school program was ended after the Fall 2014 semester. Plaintiff's Response asserts that the program was moved to a different location (Northeast Lakeview College), at which Plaintiff could have worked, but "Principal Greg Mihleder and Elida Bera denied Plaintiff the option to work the hours or the position he previously held for two years." Docket no. 102 at 9. In its reply, JISD asserts that the evening high school program was in fact closed, and that the Northeast Lakeview College program referenced by Plaintiff is a completely different program, the Judson Early College Academy. JISD points out that the Early College Academy is not an evening high school program, as evidenced by its website, which shows its instructional hours as 8:00 a.m. to 3:50 p.m. Moreover, JISD points out that Plaintiff has provided no evidence that he ever applied to work at Judson Early College Academy in any capacity. Thus, summary judgment is granted for JISD on this claim.

**Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim**

Plaintiff moves for summary judgment on JISD's counterclaim because he did not breach the Grievance Resolution Agreement. Plaintiff argues that although his *pro se* Complaint was inartfully pled, he clarified that his claims were limited to events occurring after the Agreement in his Third Amended Complaint. Plaintiff contends that summary judgment is appropriate because JISD cannot show that the claims brought by Plaintiff were based on actions occurring prior to August 11, 2014.

In the Grievance Resolution Agreement, Plaintiff agreed "to refrain from instituting, prosecuting, pressing, or in any way aiding in the institution or prosecution of any suit, claim, action, appeal or administrative proceeding against the Judson ISD . . . for any claim or cause of action arising from or in any way related to Employee's employment up to the date of this agreement" but expressly did "not release or waive any rights or claims that arise subsequent to the date this Agreement [was] executed, including any rights to enforce this Agreement and any disputes relating to his future employment or compensation." Pl. Ex. A-10.

The Court finds that summary judgment should be granted. Plaintiff denied asserting claims based on events before August 11, 2014 in his Answer and in his deposition. In his Answer, he explained that he included past events as historical context and in response to the questions and formatting of the form civil rights complaint. In his deposition, he stated that the allegations of discrimination and retaliation were the same but "completely different," meaning that it was the same type of conduct he had previously complained of, but "completely different" actions occurring after August 11, 2014. Although JISD notes that Plaintiff testified that the issues were "a continuation" of prior issues, Plaintiff meant only that the same type of conduct was continuing after August 11, 2014, and the Grievance Resolution Agreement did not prohibit Plaintiff from bringing claims based on post-August 11 conduct.

JISD complains that Plaintiff discussed past actions in his EEOC charge without informing the EEOC of his settlement and release, forcing JISD to expend attorney's fees defending the resolved claims However, Plaintiff did note in the EEOC charge that his pay claims were resolved, and thus EEOC would have been aware of a settlement. Plaintiff did say that "my employer refused to admit or respond to the race and gender part of my complaint," but he did

not assert that he was bringing a claim based on the past race and gender complaints. Moreover, JISD could have easily responded to the EEOC charge that any such claims were barred by the Agreement.

The Court finds that Plaintiff's EEOC charge and *pro se* Complaint were inartfully pled insofar as they referred to discrimination and events that occurred before August 11, 2014 without expressly identifying them as purely historical, and that his charge and this lawsuit did not violate the Grievance Resolution Agreement. The Court grants Plaintiff's motion for summary judgment on JISD's counterclaim.

## Conclusion

Judson ISD's Motion for Summary Judgment (docket no. 99) is GRANTED.

Plaintiff's Motion for Summary Judgment on JISD's Counterclaim (docket no. 98) is GRANTED.

Plaintiff's Motion to Strike (docket no. 107) is DENIED.

Any other pending motions are denied as moot.

It is ORDERED that the Clerk shall enter Judgment according to Rule 58 that

(1) Plaintiff Alton Crain take nothing on his claims and that his claims are dismissed with prejudice; and

(2) JISD take nothing on its counterclaim and that the counterclaim is dismissed with prejudice.

Counsel for Plaintiff, appointed by the Court, may seek reimbursement for any costs incurred by submitting a claim with the Clerk's office. Appointed counsel is otherwise relieved from any further obligations.

It is so ORDERED.

SIGNED this 26th day of October, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE